**John E. AIKEN, Plaintiff,**

v.

**The BUSINESS AND INDUSTRY HEALTH GROUP, INC. (now known as Employer Health Services, Inc., a Missouri corporation), Defendant.**

**No. 94–2199–JWL.**

United States District Court, D. Kansas.

April 20, 1995.

Roger D. Stanton, Daniel D. Crabtree, Stinson, Mag & Fizzell, Overland Park, KS, for plaintiff John E. Aiken.

Nancy M. Landis, Michaela M. Warden, Spencer, Fane, Britt & Browne, Overland Park, KS, for defendant Employer Health Services, Inc. fka The Business and Industry Health Group, Inc.

## MEMORANDUM AND ORDER

LUNGSTRUM, District Judge.

This matter is currently before the court on the motion of defendant Employer Health Services, Inc., for a protective order (Doc. # 58). Counsel for plaintiff John E. Aiken currently intends to interview various former employees of the defendant ex parte in an attempt to gather evidence in support of his claims. Defendant contends that these interviews would amount to a violation of the rules governing attorney conduct and that these witnesses instead should be formally deposed. The court has thoroughly examined the issues presented and concludes that defendant's motion should be denied. The court finds that Rule 4.2 of the American Bar Association Model Rules of Professional Conduct, as adopted by the Kansas Supreme Court and made applicable to matters in federal court through the District of Kansas' local rules, does not apply to ban ex parte contact with former employees of an organizational party to the litigation that is represented by counsel.

## I. Background

Plaintiff, a medical doctor, claims that defendant fired him because he refused to violate his duty to provide care in the best interests of his patients and, in so doing, retaliated against him in violation of Kansas public policy and breached the parties' employment contract. For several years, plaintiff saw and treated patients at defendant's occupational medicine clinics in Missouri and Kansas. These patients were employees and prospective employees of various companies who had agreed to send their workers to defendant's clinics. Plaintiff claims that defendant unfairly criticized him for restricting patients from working, prescribing "too much" therapy, keeping patients off work and on therapy "too long," and for being "too lenient" with patients plaintiff had adjudged not ready to return to work. In essence, plaintiff claims that he was fired because he refused to abandon his obligations to faithfully serve the best interests of his patients and instead serve defendant's business interests, which would have required plaintiff to put the interests of defendant and defendant's client companies above those of his patients.

Plaintiff now seeks to contact five former employees of the defendant, including a physician and two former account executives for the Kansas City area where plaintiff was employed. Some of these employees reported complaints from defendant's client companies regarding the conduct of plaintiff and potentially possess information related to plaintiff's claims in this action. Defendant has moved to prevent these ex parte contacts on the grounds that they violate section 4.2

of the Model Rules of Professional Conduct, as adopted by the Kansas Supreme Court, and because such contacts would necessarily infringe upon physician-patient privileges.

## II. Discussion

■ Federal courts have the inherent power to regulate the conduct of attorneys appearing before them and to require adherence to a state's code of professional responsibility. *In re Snyder,* 472 U.S. 634, 645 n. 6, 105 S.Ct. 2874, 2881 n. 6, 86 L.Ed.2d 504 (1985). This court has adopted, as the standards of professional conduct governing attorney practice in this district, "The Code of Professional Responsibility and the Model Rules of Professional Conduct as adopted by the Supreme Court of Kansas, including any definitions adopted by that court, and as amended by that court from time to time." D.Kan.R. 407(a). Accordingly, the court turns to the rules of the Supreme Court of Kansas to consider the entitlement to a protective order in this instance and to examine the issue of ex parte contacts with former employees of an organizational party.

■ With respect to the ethical guideline at issue, both the Kansas Rules of Professional Conduct and American Bar Association Model Rules of Professional Conduct are identical. Effective March 1, 1988, the Kansas Supreme Court adopted, verbatim, Rule 4.2 of the ABA Model Rules of Professional Conduct as its own Rule 4.2. *See* Model Rules of Professional Conduct Rule 4.2 (1983); Kan.Sup.Ct.R. 226 (prefatory rule and Rule 4.2). Rule 4.2 in both instances provides:

> In representing a client, a lawyer shall not communicate about the subject of the representation with a party the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized by law to do so.

The Kansas Supreme Court also adopted in principle the comments accompanying Rule 4.2 "[t]o the extent not inconsistent with" the Model Rules as adopted and Kansas statutory and case law. *See id.*

Unless one were to broadly construe the term "party," the language of Rule 4.2 does not on its face involve, or in any way prohibit, ex parte contact with former employees. *Shearson Lehman Bros., Inc. v. Wasatch Bank,* 139 F.R.D. 412, 414 (D. Utah 1991). There is no indication in the text of Rule 4.2 that such a construction is warranted or was contemplated by the rule's drafters. *Id.* at 414. The plain meaning of the phrase "party the lawyer knows to be represented by another lawyer in the matter" means a party to the litigation. A former employee with no present relationship to the organizational party is not a "party" as referred to in the rule. *See Brown v. St. Joseph County,* 148 F.R.D. 246, 252 (N.D.Ind.1993) ("If the 'party' referred to in Rule 4.2 is a corporation, then a former employee who no longer has any relationship with that corporation cannot be equated with that 'party.' "); *see also Breedlove v. Tele–Trip Co.,* No. 91–C–5702, 1992 WL 202147 (N.D.Ill. Aug. 14, 1992) ("Former employees, unlike current ones, cannot be construed as parties or agents of a corporate party and, thus, are not within the scope of the Rule."); *Monsanto Co. v. Aetna Cas. and Sur. Co.,* 593 A.2d 1013, 1016 (Del.Super.1990) (Rule 4.2 does not bar contacts with former employees since they are not "parties" and cannot bind their former employers).

Some courts, however, have understood the rule to include ex parte contact with former employees of an organizational party to the litigation and have permitted such contact only subject to certain conditions. *See, e.g., Chancellor v. Boeing Co.,* 678 F.Supp. 250, 253 (D.Kan.1988) (former employees may not be contacted if information provided would impute liability to former employer); *Curley v. Cumberland Farms, Inc.,* 134 F.R.D. 77 (D.N.J.1991) (same); *PPG Indus., Inc. v. BASF Corp.,* 134 F.R.D. 118, 121 (W.D.Pa.1990) (same); *Amarin Plastics, Inc. v. Maryland Cup Corp.,* 116 F.R.D. 36, 39–41 (D.Mass.1987) (same). These courts have arrived at such an interpretation by focusing on the language of the comment appended to Rule 4.2 and on certain policy concerns. *See, e.g., PPG Indus.,* 134 F.R.D. at 121 (subsection 2 of comment "plainly may apply to present or former employees of the corporate party"); *Chancellor,* 678 F.Supp. at 252–53 (court adopted com-

ment to ABA Model Rule 4.2 and balanced competing interests of parties). The comment to Rule 4.2 provides:

In the case of an organization, this Rule prohibits communications by a lawyer for one party concerning the matter in representation with persons having a managerial responsibility on behalf of the organization, and with any other person whose act or omission in connection with that matter may be imputed to the organization for purposes of civil or criminal liability or whose statement may constitute an admission on the part of the organization.

Model Rule of Professional Conduct 4.2 cmt. (1983). Courts have reasoned that the language of the comment is sufficiently broad to bring certain former employees within the ambit of the rule, *see Valassis v. Samelson*, 143 F.R.D. 118, 122 (E.D.Mich.1992) (citing *Curley*, 134 F.R.D. at 81; *PPG Indus.*, 134 F.R.D. at 121.), and have implicitly found that the comment can and should be used to define the scope of the rule.

In March of 1991, the American Bar Association Committee on Ethics and Professional Responsibility issued a formal opinion stating explicitly that Rule 4.2 does not extend to former employees, even managerial employees or those whose conduct might be the basis for imputing liability to the employer or whose former statement could be admitted in evidence as an admission by the employer under Federal Rule of Evidence 801(d)(2). ABA Comm. on Ethics and Professional Responsibility, Formal Op. 91–359, at 6 (March 22, 1991). The Committee recognized that persuasive policy arguments can be and have been made for extending Rule 4.2 to cover some former employees, but that "the fact remains that the text of the Rule does not do so and the comment gives no basis for concluding that such coverage was intended."[1] *Id.* The Committee further stated:

Especially where, as here, the effect of the Rule is to inhibit the acquisition of information about one's case, the Committee is loath, given the text of the Model Rule 4.2 and its Comment, to expand its coverage to former employees by means of liberal interpretation. Accordingly, it is the opinion of the Committee that a lawyer may, without violating Model Rule 4.2, communicate about the subject of the representation with an unrepresented former employee of the corporate party without the consent of the corporation's lawyer.

Notwithstanding some case law to the contrary, the clear majority of courts interpreting Rule 4.2 have held, consistent with the ABA Formal Opinion, that Rule 4.2 does not apply to communication with former employees of an organizational party who no longer have any relationship with the organization. *See Shamlin v. Commonwealth Edison Co.*, No. 93–C–2149, 1994 WL 148701, at *3 (N.D.Ill. Apr. 20, 1994); *Cram v. Lamson & Sessions Co., Carlon Div.*, 148 F.R.D. 259, 265 (S.D. Iowa 1993); *Brown*, 148 F.R.D. at 253; *Toliver v. Sullivan Diagnostic Treatment Ctr.*, 818 F.Supp. 71, 73 n. 2 (S.D.N.Y. 1993), *aff'd*, 22 F.3d 1092 (2nd Cir.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 1103, 130 L.Ed.2d 1070 (1995); *Valassis*, 143 F.R.D. at 121; *McGrane v. Reader's Digest Ass'n, Inc.*, 822 F.Supp. 1044, 1052 n. 21 (S.D.N.Y.1993); *Goff v. Wheaton Indus.*, 145 F.R.D. 351, 355 (D.N.J.1992); *In re Domestic Air Transp. Antitrust Litig.*, 141 F.R.D. 556 (N.D.Ga. 1992); *Breedlove*, No. 91–C–5702, 1992 WL 202147, at *2; *Shearson Lehman Bros.*, 139 F.R.D. at 418; *Dubois v. Gradco Sys., Inc.*, 136 F.R.D. 341 (D.Conn.1991); *Action Air Freight, Inc. v. Pilot Air Freight Corp.*, 769 F.Supp. 899 (E.D.Pa.1991), *appeal dismissed*, 961 F.2d 207 (3d Cir.1992); *Hanntz v. Shiley, Inc., a Div. of Pfizer, Inc.*, 766 F.Supp. 258, 271 (D.N.J.1991); *Sherrod v. Furniture Ctr.*, 769 F.Supp. 1021, 1022 (W.D.Tenn. 1991); *Siguel v. Trustees of Tufts College*, No. 88–0626–Y, 1990 WL 29199 (D.Mass. Mar. 12, 1990); *Oak Indus. v. Zenith Indus.*, No. 86–C–4302, 1988 WL 79614 (N.D.Ill. July 27, 1988); *Fu Inv. Co., Ltd. v. Commissioner of Internal Revenue*, No. 12983–94, 1995 WL 141555, at *2 (U.S. Tax Ct. Apr. 3, 1995); *State ex rel. Charleston Area Medical Ctr. v. Zakaib*, 190 W.Va. 186, 190, 437 S.E.2d 759,

---

**1.** The Committee did not, however, explain the inconsistency between the rule, which refers to "parties," and the comment, which refers to "persons" in the context of the rule's application to former employees.

763 (1993) ("There is little question that a majority of jurisdictions that have had occasion to consider whether Rule 4.2 restrictions are applicable to former employees have concluded that they are not applicable."); *Fulton v. Lane,* 829 P.2d 959 (Okla.1992); *Strawser v. Exxon Co., U.S.A., a Div. of Exxon Corp.,* 843 P.2d 613, 622 (Wyo.1992) ("It is clear, however, that the overwhelming recent trend has been for courts to find that Rule 4.2 does not generally bar ex parte contacts with former employees."); *Neil S. Sullivan Assoc., Ltd. v. Medco Containment Servs., Inc.,* 257 N.J.Super. 155, 161, 607 A.2d 1386, 1390 (1992); *Niesig v. Team I,* 76 N.Y.2d 363, 559 N.Y.S.2d 493, 495, 558 N.E.2d 1030, 1032 (1990); *DiOssi v. Edison,* 583 A.2d 1343 (Del.Super.1990); *Monsanto Co.,* 593 A.2d at 1016; *Bobele v. Superior Court,* 199 Cal.App.3d 708, 714–15, 245 Cal. Rptr. 144, 148 (1988). This court has located no case, issued after the promulgation of the ABA's Formal Opinion, that has declined to adopt the majority view.[2]

The defendant does not dispute that a majority of courts have concluded that Rule 4.2 does not ban ex parte contacts with former employees of an organizational party, but relies instead on an opinion from this district, *Chancellor v. Boeing Co.,* which considered Rule 4.2 to ban ex parte contact with certain former employees. 678 F.Supp. 250, 253 (D.Kan.1988) (Crow, J.). Defendant's reliance on *Chancellor* is misplaced for several reasons.[3] For one, *Chancellor* was decided in 1988, three years before the ABA Formal Opinion. Since that court relied on a previous ABA opinion in its order, it is likely that

the 1991 ABA Formal Opinion also would have influenced the court. Second, although *Chancellor* addressed former employees, the court was only required to rule on the propriety of ex parte contact with certain *current* employees of the corporate defendant. *Id.* at 251. To the extent it strayed from a discussion of the rule's applicability to current employees, its pronouncements are necessarily dicta. *See Hanntz,* 766 F.Supp. at 267 (describing reference by *Chancellor* to former employees as "dicta"). Finally, *Chancellor* interpreted DR 7-104 of the Kansas Code of Professional Responsibility which has been superseded by Rule 4.2. *See* Kan.Sup.Ct.R. 225, 226 (publisher's note and prefatory rule).[4]

This court is persuaded, consistent with the majority view, that Rule 4.2 should not be read to prohibit ex parte contact with former employees of an organizational party to the litigation that is represented by counsel. In embracing the ABA Model Rules, the Kansas Supreme Court specifically stated that the comments to the rules were adopted only to the extent "not inconsistent with" the rules themselves.[5] *See* Kan.Sup.Ct.R. 226 (prefatory rule). The court believes that the comment to Rule 4.2 is inconsistent with the rule itself to the extent that it expands, or attempts to expand, the plain meaning of the term "party" to include persons with no current employment relationship with the organizational party. According to Kansas Supreme Court Rule 226, then, where the rule and comment are inconsistent, the clear terms of the rule must prevail. *Id.*[6]

---

2. The court notes that the Kansas Supreme Court, as well as federal courts in this district, have looked to ABA formal opinions for guidance in interpreting the Kansas and ABA Model Rules. *See, e.g., State v. Rice,* 227 Kan. 416, 421, 607 P.2d 489, 495 (1980); *In re Ratner,* 194 Kan. 362, 371, 399 P.2d 865, 872–73 (1965); *Reich v. Chicago Title Ins. Co.,* No. 93–2309–KHV, 1994 WL 101509, at *1 (D.Kan. Jan. 5, 1994).

3. The court notes that another judge in this district has taken a position contrary to *Chancellor.* In *Stowell v. City of Wichita,* it was held, albeit with no analysis, that the plaintiff, without violating Rule 4.2, could conduct an ex parte interview of the city's former deputy police chief. No. 90–1421–K, 1995 WL 363413, at *1, 1991 U.S. Dist. LEXIS 20727, at *1 (D.Kan. May 17, 1991).

4. In any event, the decision of one court within a district is not binding upon another court within the same district and independent review by this court is warranted. *Threadgill v. Armstrong World Indus., Inc.,* 928 F.2d 1366, 1371 (3d Cir.1991).

5. The court notes that there is no Kansas case which addresses the issue now before the court.

6. The court notes that the Kansas Bar Association has issued a formal opinion which follows the minority position and limits ex parte communications with former employees. In this court's view, the KBA places too much emphasis upon the comment to the rule and too little upon the language of the rule itself. *See* KBA Comm. on Ethics/Advisory Services, Opinion No. 92–07, at

The purpose of a comment is to explain a rule. *Valassis,* 143 F.R.D. at 122. "[It] does not add to or in any way expand upon the rule; it is explicative of the rule." *Id.* Absent any indication that the Kansas Supreme Court intended, in embracing wholeheartedly ABA Model Rule 4.2, that it be applied to communications with former employees, this court declines to expand the rule's clear terms. The court finds persuasive the reasoning of *Dubois v. Gradco Systems, Inc.,* in which Judge Cabranes concluded that if the drafters of the Model Rule intended former employees to come within its proscriptions, they could very easily have made that intent explicit. 136 F.R.D. 341, 345 (D.Conn.1991). "[T]here seems little doubt that the drafters would have been explicit had they intended ... to overturn the traditional view that former employees are not encompassed within the term 'party.'" *Id.; cf. Ins. Co. of North America v. Superior Court,* 32 Cal.App. 4th 94, 119, 37 Cal.Rptr.2d 843, 858 (1995).

Moreover, this reading is consistent with the purposes and policies of Rule 4.2. Rule 4.2 preserves the posture of parties in an adversarial system by preventing a represented party from being overwhelmed by opposing counsel in the absence of friendly counsel, and by preventing conduct intended to induce the represented party to somehow impair, compromise or settle his or her own case. *Hanntz,* 766 F.Supp. at 265. In addition, it preserves the protections obtained by retaining counsel and prevents disruption of the attorney-client relationship. *Id.* These concerns rarely, if ever, come into play when communications with former employees are sought. As the court stated in *Hanntz v. Shiley:*

> The adversarial system, of course, is called into play only in the context of adverse parties. When an individual is not a party, he or she is not adverse in the sense that his or her interests are at stake in the litigation. The former employee would not be in a position to be influenced into a settlement because it is not his or her case to settle ... Similarly, allowing counsel to communicate *ex parte* with the former employees of a corporation does not always implicate the attorney-client relationship between the corporation and its counsel ... [T]he mere fact an individual is a former employee suggests he or she is unlikely to have a continuing relationship with either the corporation or its counsel.

766 F.Supp. at 265.

The court recognizes that a former employee could possess and reveal information which could potentially result in liability being imposed on an organization. The purpose of Rule 4.2, however, is not to prevent the flow of information, even if damaging to a party to the suit. To enlarge the scope of the rule hampers the broad discovery purposes contained in Federal Rule of Civil Procedure 26. In an era when easing or eliminating the unnecessary burdens and expense of litigation is widely viewed as desirable, this court is loath to create limitations on attorney communications which make the litigation process more difficult while providing little in the way of a corresponding benefit. *Cf. Cram,* 148 F.R.D. at 265 (citing *Goff,* 145 F.R.D. at 356) ("[R]estricting an attorney's ability to communicate with former employees strikes an unreasonable balance between protecting a relationship that does not exist and unduly restricting the need for litigants to have access to all relevant information...").

Defendant's final argument is that ex parte contact should be prohibited under Rule 4.2 because some of the former employees plaintiff wishes to speak with possess information subject to the physician-patient privilege. Defendant's concern does not justify an absolute proscription against ex parte contacts. *See Hanntz,* 766 F.Supp. at 270 (concerns about attorney-client confidences insufficient to justify ban of ex parte contacts). Con-

---

p. 3 & n. 3 (October 23, 1992) (noting that rule says "'parties', but really is discussing 'persons'" and citing solely to the comment to the rule for authority for such a conclusion). This court is simply not persuaded by the KBA's analysis. Although that opinion, erring on the side of caution, may have been prudent advice for prac-

titioners in light of the apparent contradictory positions of *Chancellor* and the ABA Formal Opinion, this court does not believe that the Kansas Supreme Court would ignore the ABA Formal Opinion and the clear weight of judicial authority to *Chancellor's* contrary.

trary to defendant's assertion, the former employee's mere possession of privileged information gained during the employment relationship is not the kind of current employment or agency-type relationship that is required to even arguably bring a former employee within the ambit of Rule 4.2.

Although defendant does not specifically assert a physician-patient privilege as an independent basis for a protective order, the court in any event notes that plaintiff's counsel must take care not to seek to induce or listen to disclosures by former employees of privileged communications. *See Dubois,* 136 F.R.D. at 347. The physician-patient privilege does not belong to, and is not for the benefit of, the former employee or the defendant; rather it belongs to, and is for the benefit of, the patient. *Wesley Medical Ctr. v. Clark,* 234 Kan. 13, Syl. ¶¶ 7, 8, 669 P.2d 209 (1983). Efforts by plaintiff's counsel to induce or listen to privileged communications may violate Rule 4.4 of the Model Rules of Professional Conduct, which requires respect for the rights of third persons. *Dubois,* 136 F.R.D. at 347. Plaintiff's counsel is also required to comply with Rule 4.3 by making clear to the former employees the nature of his role in the case, including the identity of the plaintiff and the defendant. *Id.*[7]

Plaintiff's counsel has informed the court that he will not seek information which would require any former employee to reveal a patient's confidences, but is instead interested in information such as the former employees' knowledge of plaintiff, defendant's methods of operating, the way in which those methods expose defendant's core values and the techniques which the defendant used to exert control over its employees. Counsel for plaintiff has also represented that he will refrain from inquiring about privileged information and will warn former employees not to reveal such information. In light of plaintiff's representations that he intends to comply with applicable rules, a protective order is unnecessary. Defendant simply has not shown that the physician-patient privilege

likely will be infringed. *See Reich v. Chicago Title Ins. Co.,* No. 93–2309–KHV, 1994 WL 101509, at *2 & n. 1 (D.Kan. Jan. 5, 1994) (court denied motion for protective order where movant failed to demonstrate that the undesired consequences were likely to occur).

**IT IS THEREFORE ORDERED BY THE COURT** that the motion of defendant Employer Health Services, Inc., for a protective order (Doc. # 58) is denied.

**IT IS SO ORDERED.**

---

**7.** This list is not exhaustive. The full spectrum of ethical requirements that bind an attorney in any other situation is equally binding here, where plaintiff's attorney seeks to engage in ex parte contact with an unrepresented former employee of the defendant. *See Shearson Lehman Bros.,* 139 F.R.D. at 418. Strict adherence to these rules is demanded and any information gained in violation of an applicable ethical guideline remains subject to suppression. *Id.*