Leonard HOLDREN, Plaintiff,

v.

**GENERAL MOTORS CORP. and Kenny White, Defendants.**

No. 97–2538–JWL.

United States District Court, D. Kansas.

July 27, 1998.

James T. Madison, Kansas City, MO, for Plaintiff.

Robert J. Harrop, Rosalee M. McNamara, David C. Vogel, Rosalee M. McNamara, Lathrop & Gage L.C., Kansas City, MO, for Defendants.

## MEMORANDUM AND ORDER

LUNGSTRUM, District Judge.

Plaintiff Leonard Holdren filed suit against defendants General Motors Corporation and Kenny White alleging violations of the Age Discrimination in Employment Act and various common law claims arising out of his employment with defendant General Motors Corporation (GM). This matter is presently before the court on defendants' motion for a protective order (doc. # 38). According to defendants, plaintiff's counsel has encouraged and facilitated plaintiff's contact with GM employees in violation of Rule 8.4(a) and Rule 4.2 of the Model Rules of Professional Conduct. As set forth in more detail below, the court grants defendants' motion for a protective order.[1]

*Background*

Plaintiff Leonard Holdren is currently employed as a manager by defendant GM and, consequently, communicates with GM employees on a regular basis. As a result of this contact, plaintiff has had the opportunity to discuss his lawsuit with several GM employees and, in fact, has discussed the facts underlying his lawsuit with several employees, including GM managers.

During ongoing discussions with his counsel about the lawsuit, plaintiff has related the substance of his various conversations with GM employees. Apparently, plaintiff's counsel raised concerns on several occasions about whether those GM employees who offered favorable comments would offer the same favorable testimony at trial. At some point thereafter, perhaps as a result of these concerns, plaintiff asked his counsel whether he should attempt to obtain signed sworn statements from certain GM employees. According to plaintiff's deposition testimony, his counsel responded, "That would be a good idea. Yeah." In this same conversation, plaintiff's counsel advised his client on the "effect of out of court statements" and the "value" of written statements. Plaintiff's counsel also discussed with his client the costs associated with alternative methods of discovery. Finally, at plaintiff's request, plaintiff's counsel advised his client how to draft an affidavit.[2] Plaintiff testified that he obtained written statements from at least four GM employees and has sought statements from several others.

Although defendants concede that the parties in this action are not prohibited from communicating directly with each other, defendants maintain that the endorsement and encouragement of such contacts by plaintiff's counsel violates Rule 8.4(a) and Rule 4.2 of the Model Rules of Professional Conduct. Although the circumstances described above present a close case, the court concludes that plaintiff's counsel has circumvented Rule 4.2 through the actions of his client in violation of Rule 8.4(a). Thus, defendants' motion for a protective order is granted.

*Discussion*

Rule 4.2 of the Model Rules of Professional Conduct, as adopted by the Kansas Supreme Court,[3] prohibits a lawyer from communicating "about the subject of the representation with a party the lawyer knows to be represented by another lawyer in the

---

**1.** As an initial matter, plaintiff suggests that defendants' motion must be denied because defendants have filed their motion pursuant to Fed. R.Civ.P. 26(c) which, according to plaintiff, applies only to the "formal discovery" process rather than the issues raised here. Defendants, however, merely certified under Rule 26(c) and Local Rule 37.2 that they conferred in good faith with plaintiff's counsel in an effort to resolve the dispute prior to filing their motion. In any event, it is well settled that "[f]ederal courts have the inherent power to regulate the conduct of attorneys appearing before them and to require

adherence to a state's code of professional responsibility." See *Aiken v. Business & Indus. Health Group, Inc.*, 885 F.Supp. 1474, 1476 (D.Kan.1995) (citing *In re Snyder*, 472 U.S. 634, 645 n. 6, 105 S.Ct. 2874, 86 L.Ed.2d 504 (1985)).

**2.** The affidavits presented to GM employees by plaintiff, however, were drafted by plaintiff.

**3.** The District of Kansas, in turn, has adopted the Model Rules of Professional Conduct as adopted by the Kansas Supreme Court. See D.Kan. Rule 83.6.1(a).

matter, unless the lawyer has the consent of the other lawyer or is authorized by law to do so." Kan.S.Ct. Rule 226 at Rule 4.2.[4] In those cases in which the parties are individuals, the rule is easily applied. When one or more parties is a corporation or other organization, however, an application of Rule 4.2 becomes more difficult. Because an organization functions only through its people, the question is which people affiliated in some way with the organization occupy a status or play a role sufficient to take on the attributes of the party itself. Is it everyone, or some smaller subset—and, if the latter, who is included? The rule itself is silent on the subject, so the court must look elsewhere for help in answering the question. The comment to Rule 4.2 provides some guidance in determining the intent of the drafters with respect to which persons who are connected to an organization should be considered "parties" for purposes of Rule 4.2:

> In the case of an organization, this Rule prohibits communications by a lawyer for one party concerning the matter of representation with persons having a managerial responsibility on behalf of the organization, and with any other person whose act or omission in connection with that matter may be imputed to the organization for purposes of civil or criminal liability or whose statements may constitute an admission on the part of the organization.

Kan.S.Ct. Rule 226 at Rule 4.2 cmt. The Kansas Supreme Court has adopted in principle the comments accompanying Rule 4.2 "[t]o the extent that they are not inconsistent with" the Model Rules as adopted by the Kansas Supreme Court and Kansas statutory and case law. See Kan.S.Ct. Rule 226 (prefatory rule). The comment to Rule 4.2 is consistent with the rule to the extent the comment explains which people involved with an organizational party constitute "parties" for purposes of the rule.[5] Thus, plaintiff's counsel in this case would be prohibited under Rule 4.2 from contacting GM employees with managerial responsibility and GM employees whose acts or omissions may be imputed to GM or whose statements may constitute an admission on the part of GM. Although there is no allegation or evidence that plaintiff's counsel directly contacted any GM employees, Rule 8.4(a) of the Model Rules of Professional Conduct prohibits a lawyer from violating or attempting to violate the rules of professional conduct "through the acts of another." Model Rules of Professional Conduct Rule 8.4(a); Kan.S.Ct. Rule 226 at Rule 8.4(a). Thus, since plaintiff's counsel is barred under Rule 4.2 from communicating with certain GM employees, he may not circumvent Rule 4.2 by directing his client to contact these employees. The ABA's interpretation is the same as this court's. See Annotated Model Rules of Professional Conduct 425 (Center for Professional Responsibility, American Bar Ass'n, 2d ed. 1992) (Rule 8.4(a) "could prohibit" a lawyer from "directing or advising a client to communicate with a represented party"). See also ABA Comm. on Ethics and Professional Responsibility, Formal Op. 95–396 (1995) ("Since a lawyer is barred under Rule

---

4. Rule 4.2 of the American Bar Association's Model Rules of Professional Conduct and Rule 4.2 as adopted by the Kansas Supreme Court are identical in all but one respect. In August 1995, the ABA House of Delegates amended Rule 4.2 to prohibit communications with a "person" rather than a "party." See ABA Compendium of Professional Responsibility Rules and Standards 84 n. 13 (1997). The purpose of this amendment is to clarify that Rule 4.2's coverage extends to any represented person who has an interest in the matter to be discussed and who is represented with respect to that interest, regardless of whether the person is a "party" in a formal sense to the proceeding or transaction. Id. at 116, 463–66. The Kansas Supreme Court has not adopted this amendment.

5. In Aiken v. Business & Indus. Health Group, Inc., 885 F.Supp. 1474 (D.Kan.1995), this court concluded, as has the ABA and virtually every court which has looked at the issue since the ABA issued its formal opinion, see id. at 1477–78, that the comment to Rule 4.2 is inconsistent with the rule to the extent the comment purports to expand the plain meaning of the term "party" to include former employees who no longer have an employment relationship with the organizational party and, thus, by definition are not included within the meaning of the term "party." Here, by contrast, the comment's interpretive assistance does not lead to the inclusion of those who clearly do not fall within the plain meaning of the term but, rather, helps give definition to the otherwise vague contours of the term in question by reference to a clearly included group of persons, a member of which can be said to constitute a "party." Thus, to this extent, the comment is consistent with the rule.

4.2 from communicating with a represented party about the subject matter of the representation, she [under Rule 8.4(a) ] may not circumvent the Rule by sending an investigator to do on her behalf that which she is herself forbidden to do.").

There is a dearth of authority specifically addressing when an attorney has violated the rules of professional conduct "through the acts of another." The predecessor to Rule 4.2, however, expressly incorporated this concept in the text of the rule itself, rather than in a separate rule, by not only prohibiting an attorney from engaging in ex parte communications, but also prohibiting an attorney from "causing another" to engage in such communications. *See* Model Code of Professional Responsibility DR 7–104(A)(1) (1980). Because there is some authority available which attempts to give definition to what "causing another" to act means in the context of DR 7–104(A)(1), and because the court has no basis to conclude that a substantive change was intended when the concepts were separated into two different rules, the court finds it relevant and helpful to consider that authority in determining whether plaintiff's counsel in this case can be said to have violated the professional rules "through the acts of another."

A review of the few decisions addressing whether an attorney has "caused" his or her client to act suggests that there is a broad spectrum of conduct that constitutes a violation of this disciplinary rule. At one end of the spectrum are those cases in which an attorney actually requests or engineers a contact or action by the client that would otherwise be prohibited by the disciplinary rules. *See, e.g., In re Marietta,* 223 Kan. 11, 569 P.2d 921 (1977) (publicly censuring lawyer who "caused his client" to communicate with opposing party in violation of DR 7–104(a)(1) where lawyer prepared release of liability for client to deliver to opposing party). At least one case, however, has suggested that an attorney's mere knowledge of a client's contact or action is sufficient to constitute an ethical violation. *See Massa v. Eaton Corp.,* 109 F.R.D. 312, 313 (W.D.Mich. 1985) (plaintiff's counsel violated DR 7–

104(A)(1) by "allowing" his client to conduct informal interviews of managerial level employees of corporate defendant).

■ The conduct of plaintiff's counsel in this case falls somewhere on the spectrum between these two extremes. Here, plaintiff began discussing the facts of his case with GM employees before his lawsuit was filed and before either "party" was represented by counsel. Thus, plaintiff clearly made the decision to discuss his case with GM employees without any influence or suggestion by his counsel. Although plaintiff's contacts continued after both parties had retained counsel, and plaintiff's counsel knew of his client's contacts, "there is nothing in the disciplinary rules which restrict a client's right to act independently in initiating communications with the other side, or which requires that lawyers prevent or attempt to discourage such conduct." *See Miano v. AC & R Advertising, Inc.,* 148 F.R.D. 68, 83 (S.D.N.Y.1993) (citing New York City Bar Association Formal Opinion No.1991–2, at 5–6); *Annotated Model Rules of Professional Conduct* 392 (Center for Professional Responsibility, American Bar Ass'n, 3d ed.1996) (counsel is not obligated to "dissuade" his client from communicating with the opposing party). The text of and comment to Rule 4.2 also support this conclusion. *See* Kan.S.Ct. Rule 226 at Rule 4.2 and Rule 4.2 cmt. ("parties to a matter may communicate directly with each other").[6]

The circumstances described by the parties, however, indicate that plaintiff's counsel had more than mere knowledge of his client's contacts. Significantly, plaintiff's counsel encouraged plaintiff to obtain affidavits from GM employees by advising him of the difference between "out of court statements" and signed affidavits for trial purposes. Counsel also discussed with his client the costs associated with formal methods of discovery (presumably, depositions). Moreover, albeit at his client's request, counsel facilitated his client's actions by advising him how to draft an affidavit. While it is true that plaintiff's counsel encouraged his client's actions only

---

**6.** Because the language of Rule 4.2 does not prohibit party-to-party contact, and expressly applies only to conduct by attorneys, that portion of the comment concerning parties communicating directly with each other is consistent with Rule 4.2.

after plaintiff specifically asked about obtaining written statements, the court finds that such conduct crosses the line and violates Rule 4.2 "through the acts of another." In fact, the case upon which plaintiff's counsel primarily relies supports this conclusion. *See Miano v. AC & R Advertising, Inc.,* 148 F.R.D. 68, 82 (S.D.N.Y.1993) ("causing" a client to communicate with another party in the context of DR 7–104(A)(1) includes "the endorsement or encouragement of such a course of action, even when it is first raised or proposed by the client") (quoting New York City Bar Association Formal Opinion No.1991–2, at 7).

In sum, the court concludes that plaintiff's counsel has engaged in conduct prohibited by Rule 8.4(a) and, thus, has essentially circumvented Rule 4.2. The court notes, however, that there is no evidence or allegation that plaintiff's counsel knowingly or deliberately violated the disciplinary rules. Rather, it seems that plaintiff's counsel, while attempting to walk the appropriate line ever so delicately, has simply stepped over that line. Nonetheless, he violated the rule and defendants are entitled to relief. Accordingly, defendants' motion for a protective order is granted.[7]

■ The court next turns to address the appropriate remedy for the violation. Defendants request that the court: (1) prohibit plaintiff's counsel from encouraging or facilitating further ex parte communications concerning the subject matter of this case with GM employees; (2) prohibit plaintiff from engaging in any further ex parte contacts with GM employees concerning the subject matter of this case; (3) require plaintiff to submit to defendants the names of all GM employees with whom plaintiff has communicated concerning the subject matter of this case; (4) require plaintiff to produce to defendants a detailed summary of the date,

place and subject matter of all such communications, together with any written statements or other evidence obtained from GM employees; and (5) order that any evidence obtained by plaintiff through ex parte communications with GM employees be deemed inadmissible at trial. The court will address each of defendants' specific requests.

With respect to the actions of plaintiff's counsel, clearly it is appropriate for the court to require adherence to the disciplinary rules as adopted by the Kansas Supreme Court. In that regard, the court will order plaintiff's counsel to cease endorsing, encouraging, directing or facilitating his client's communications with any "parties" within the meaning of Rule 4.2.

■ Fashioning the appropriate remedy with respect to the actions of plaintiff himself, however, is a separate question. As set forth above, the disciplinary rules do not prohibit plaintiff from communicating directly with an opposing party. Thus, the court will not order plaintiff to cease all communications with GM employees concerning the subject matter of this case. However, it is undisputed that plaintiff obtained or attempted to obtain signed affidavits from GM employees only after his counsel advised him of the benefits of obtaining such statements and how to draft them. In such circumstances, the court believes that any further affidavits obtained by plaintiff would be the fruits of impermissible conduct on the part of plaintiff's counsel. Thus, the court will order plaintiff to cease obtaining or attempting to obtain signed affidavits from any "parties" within the meaning of Rule 4.2.

■ Finally, it is unclear from the parties' papers whether all of the employees with whom plaintiff communicated about the subject matter of this case or from whom plain-

---

7. In his papers, plaintiff suggests that an order prohibiting the conduct described here would cut against what he characterizes as this court's policy "favor[ing] broad discovery" as evidenced, in plaintiff's opinion, by the court's decision in *Aiken v. Business & Indus. Health Group, Inc.,* 885 F.Supp. 1474, 1479 (D.Kan.1995). Plaintiff misconstrues the court's opinion. In *Aiken,* the court certainly did not base its interpretation of Rule 4.2 on a desire to further a policy goal by reading a rule contrary to its intended meaning.

Rather, the court merely made the observation that the expanded reading of the rule urged by the unsuccessful advocate in that case was neither consistent with the rule's plain meaning nor necessarily beneficial. *See id.* ("To enlarge the scope of the rule hampers the broad discovery purposes contained in Federal Rule of Civil Procedure 26."). Here, as in *Aiken,* the text of the rule that has been enacted, and not policy considerations that might justify enacting a different rule, must control in any event.

tiff obtained written statements are "parties" within the meaning of Rule 4.2. In an effort to ascertain whether certain evidence should be deemed inadmissible at trial, the court will order plaintiff to submit to defendants the names of all GM employees with whom plaintiff has communicated concerning the subject matter of this case, together with a detailed summary of the date, place and subject matter of these communications and copies of any written statements or other evidence obtained from these employees. If plaintiff has obtained evidence from "parties" within the meaning of Rule 4.2, such evidence will be deemed inadmissible at trial. *See, e.g., Belote v. Maritrans Operating Partners, L.P.*, No. 97–3993, 1998 WL 136523, at *7 (E.D.Pa. Mar. 20, 1998) (precluding plaintiff from using during trial any information obtained through investigator's ex parte contacts with "party" employee). Defendants shall file any motion to exclude such evidence which they believe falls in that category no later than 5:00 p.m. on August 12, 1998, and plaintiff shall file any response by noon on August 14, 1998.[8] The court will take that motion up at the final pretrial conference on August 17, 1998 at 3:30 p.m.

IT IS THEREFORE ORDERED BY THE COURT THAT defendants' motion for protective order (doc. # 38) is granted.

IT IS FURTHER ORDERED BY THE COURT THAT plaintiff Leonard Holdren's counsel immediately cease and desist from encouraging or facilitating further ex parte communications concerning the subject matter of this case with GM employees who have managerial responsibility, whose acts or omissions may be imputed to GM, or whose statements may constitute an admission on the part of GM.

IT IS FURTHER ORDERED BY THE COURT THAT plaintiff Leonard Holdren immediately cease and desist from obtaining or attempting to obtain affidavits from GM employees who have managerial responsibility, whose acts or omissions may be imputed to GM, or whose statements may constitute an admission on the part of GM.

IT IS FURTHER ORDERED BY THE COURT THAT plaintiff submit to defen-

dants on or before August 6, 1998, the names of all GM employees with whom plaintiff has communicated concerning the subject matter of this case.

IT IS FURTHER ORDERED BY THE COURT THAT plaintiff submit to defendants on or before August 6, 1998, a detailed summary of the date, place and subject matter of all communications with any GM employees together with copies of any written statements or other evidence obtained from GM employees.

IT IS FURTHER ORDERED BY THE COURT THAT defendants shall file any motion to exclude such evidence no later than 5:00 p.m. on August 12, 1998, and plaintiff shall file any response by noon on August 14, 1998.

IT IS SO ORDERED.

---

8. Service of all such motions and responses shall be by facsimile or hand delivery, and courtesy copies shall be provided to chambers at the time of filing.