Cynthia TURNBULL, Plaintiff,

v.

**TOPEKA STATE HOSPITAL,
et al., Defendants.**

Civ.A. No. 98–2222—GTV.

United States District Court,
D. Kansas.

May 11, 1999.

Paul F. Pautler, Jr., Blackwell Sanders Peper Martin, LLP, Michele L. Giovagnoli, Kansas City, MO, for plaintiff.

Bruce A. Roby, Waggener, Arterburn & Standiferd, Alan D. Hughes, Social & Rehabilitation Services, Deborah Purce–Jones, Jones & Jones, Topeka, KS, Jane Kelly Coates, Social and Rehabilitation Services, Office of the General Counsel, for defendants.

### *MEMORANDUM AND ORDER*

RUSHFELT, United States Magistrate Judge.

The court has before it four motions: Plaintiff's Motion to Compel Discovery (doc. 55); Defendants Kansas' and Topeka State Hospital's Motion for Protective Order (doc. 59); Defendants Kansas' and Topeka State Hospital's Motion for Protective Order Pro-

hibiting Ex Parte Communications (doc. 60); and Joint Request for Hearing on Plaintiff's Motion to Compel Discovery and Defendants' Motions for Protective Order (doc. 80). The Joint Request simply asks for oral argument on the other three motions. The court will overrule the request for oral argument as unnecessary. The parties have adequately briefed their motions.

Plaintiff's Motion to Compel Discovery (doc. 55) seeks an order to compel "defendants' management witnesses to answer deposition questions pertaining to defendants' Security Management Reports, Risk Management Committee Minutes and/or Executive Committee Minutes." Plaintiff also asks for her attorneys fees and costs associated with this motion. She further asks that defendants bear the costs of reconvening the depositions of two management employees of Topeka State Hospital, Randy Proctor and Magdalene Kovach.

The principal dispute upon this motion involves the applicability of privileges provided by Kansas statute K.S.A. 65–4925. During depositions defense counsel instructed Mr. Proctor and Ms. Kovach not to answer questions pertaining to documents previously produced by defendants during discovery. The documents include Security Management Reports, Risk Management Committee minutes, and Executive Committee Minutes. Defense counsel based his instructions to the deponents upon grounds that the statute provides privileges against discovery of the documents and against testimony by committee members who attended the meetings reflected by the minutes and reports. Plaintiff contends the statutory privileges do not apply to this case, because her claim arises under federal and not state law. She further contends that, by having produced the documents, defendants have waived any privilege that may have existed for the documents and the testimony.

■ Defendants concede the general principle, "that the public has a right to every man's evidence." *United States v. Bryan,* 339 U.S. 323, 331, 70 S.Ct. 724, 94 L.Ed. 884 (1950). They also recognize that statutory privileges created by a state do not control federal courts in a non-diversity case, such as

this one. They argue upon principles of comity and the public policy behind the statute, nevertheless, that this court should apply K.S.A. 65–4925 and uphold the privileges it provides against the requested testimony.

Neither the motion nor the briefing clarifies whether the deponents themselves invoked a privilege and refused to testify or whether plaintiff has simply imputed such refusal to them upon the instruction of defense counsel. The Certificate of Service indicates no service of the motion upon the deponents, only upon defense counsel. The deponents have entered no appearance upon the motion. The court may reasonably infer, however, that they are within the control of defense counsel for the purpose of discovery in this case. Accordingly, it addresses the motion upon its merits; even though it may deny an order directed to the deponents personally.

■ Plaintiff has correctly noted that evidentiary privileges generally are strictly and narrowly construed, because they detract from the search for truth. The United States Supreme Court has thus described such privileges in *University of Pennsylvania v. Equal Employment Opportunity Commission,* 493 U.S. 182, 110 S.Ct. 577, 107 L.Ed.2d 571 (1990). *ERA Franchise Systems v. Northern Insurance Company,* 183 F.R.D. 276 (D.Kan.1998) also recognizes this principle. It also recognizes the applicability of Fed.R.Evid. 501 in determining what privileges may apply. The rule provides that:

> Except as otherwise required by the Constitution of the United States or provided by Act of Congress or in rules prescribed by the Supreme Court pursuant to statutory authority, the privilege of a witness, person, government, State, or political subdivision thereof shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience. However, in civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness, person, government, State, or

political subdivision thereof shall be determined in accordance with State law.

The initial sentence of Rule 501 thus clearly provides that the privilege of a witness is governed by principles of common law, unless a controlling federal statute or rule exists. The second sentence of the rule creates the exception for civil cases, requiring application of a privilege supplied by State law, but only "with respect to an element of a claim or defense as to which State law supplies the rule of decision." In the present action the court finds no "element of a claim or defense as to which State law supplies the rule of decision." The claims of plaintiff proceed only by virtue of federal statute, 42 U.S.C. § 2000e–5. Federal and not State law thus provides the rule of decision. The exception of Rule 501 does not apply. Defendants have not pointed to any principle of common law as justification in this case to apply the statutory privilege(s) created by K.S.A. 65–4925.

■ Several federal decisions support this construction of Fed.R.Evid. 501. *Mason v. Stock*, 869 F.Supp. 828, 832 (D.Kan.1994) succinctly states the principle: "[I]n federal question cases, privilege determinations depend solely on the application of federal statutes and general principles of common law as interpreted by federal courts." When no state claims are raised, "the second sentence of Rule 501 does not apply, and whether [the applicability of any privilege] depends on the Constitution, Acts of Congress, and general principles of common law viewed in light of reason and experience." *Id.* at 831 (citing *United States v. Zolin*, 491 U.S. 554, 562, 109 S.Ct. 2619, 105 L.Ed.2d 469 (1989)). As to federal question claims, "Fed.R.Evid. 501 mandates the application of federal common law on privilege." *Hinsdale v. City of Liberal, Kansas*, 981 F.Supp. 1378, 1379 (D.Kan. 1997).

Defendants point to a concern that plaintiff may yet seek to amend her amended complaint to add pendent claims under state law. They note that she included such claims in her original complaint and then agreed to their dismissal without prejudice. They have concern that plaintiff may seek to reassert them after the discovery. At this point the court finds no basis for the concern other than speculation. It notes that the Revised Scheduling Order set a deadline of March 31, 1999, for amendments to pleadings.

■ For the foregoing reasons the court sustains in part and overrules in part the motion to compel. It sustains the motion to the extent that it will allow plaintiff to reconvene the depositions of Randy Proctor and Magdalene Kovach to obtain testimony pertaining to the documents in question. The court will also require and direct defendants and their counsel to withdraw their instructions that the deponents not provide such testimony. The court denies the motion to the extent it seeks an order directed to the deponents to answer questions. As already noted, the court finds nothing to indicate they have been notified or have otherwise appeared upon this motion. The court indeed finds nothing to indicate the deponents themselves refused to answer anything. The relevant inquiry about the documents appears to have terminated simply upon the questions, objections, and colloquy of counsel.

■ The court also overrules the requests of plaintiff for an award of attorneys fees and costs associated with the motion and for the prospective costs of reconvening the depositions. For the reasons stated the court has overruled part of the motion. Although plaintiff has prevailed by the ruling that the asserted privileges are inapplicable, the court finds defendants reasonably justified in raising the question, particularly in view of the State public policy implicit in K.S.A. 65–4925. Except for any costs of travel to and from the reconvened depositions, the court assumes the fees and expenses of counsel and any reporter would be essentially the same, whether the testimony be obtained at the previous depositions or upon reconvening. The court finds that an award of fees and expenses are thus not justified.

The court next addresses Defendants Kansas' and Topeka State Hospital's *Motion for Protective Order* (doc. 59). Pursuant to Fed. R.Civ.P. 26(c)(4), defendants seek "an Order of Protection that the plaintiff not be allowed to inquire into certain subject matters during discovery or in the alternative, that the scope

of disclosure or discovery in this case be limited to certain matters" as detailed in their supporting memorandum. Their memorandum proposes a protective order to

provide that the records of the review committees (Risk Management, Executive and Safety Committees of Topeka State Hospital) not be inquired into or that the scope of discovery concerning these records be limited only to those matters in which the plaintiff can make an affirmative showing that she was cognizant of such matters during the period of her employment at Topeka State Hospital.

Defendants contend that for her claim plaintiff may rely only upon evidence relating to harassment of which she was made aware during the time that she was allegedly subject to a hostile work environment. To support this contention, defendants rely upon *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993) and *Hirase–Doi v. U.S. West Communications, Inc.*, 61 F.3d 777 (10th Cir.1995). These cases stand for the proposition that a claim of sexual harassment, based upon a hostile work environment, requires a plaintiff to show not only objectively that such environment existed, but also her own subjective perception that it was abusive. Consequently, defendants argue that evidence of harassment in the workplace is neither discoverable nor admissible, if plaintiff did not know about it.

Opposing the motion for protective order, plaintiff suggests that the cases cited by defendants limit neither the scope of discovery nor the evidence at trial as defendants suggest. To the contrary, she asserts that a key element of her claim is that management-level employees of defendant knew or should have known of the hostile work environment. She argues that such knowledge may be shown by evidence of circumstances in the workplace, whether or not plaintiff herself was aware of them. She relies upon *Hirase–Doi* for these propositions.

 The argument of defendants ignores the issue of what knowledge Topeka State Hospital may have had about an allegedly hostile workplace. Defendants correctly suggest that a claim based upon a hostile work environment requires proof that plaintiff subjectively perceived the harassment of such environment, as well as objective evidence that it existed. If plaintiff has no awareness of a hostile work environment, she has no claim. This part of her burden of proof addresses the question of what she knew and what damages if any she sustained as a result.

As another part of her burden, however, plaintiff must prove that the employer Topeka State Hospital knew or should have known about a hostile work environment. What plaintiff herself perceived shows how the hostile work environment affected her personally. Such proof does not set a limit, however, upon what the employer knew or should have known so as to create a duty to correct it. The court does not read the cited cases to set such a limit. An employer conceivably may have knowledge of rampant sexual harassment of its employees over a period of many years in its workplace. If plaintiff is unaware of such harassment, she has no claim; it has not affected her personally. Plaintiff may be aware of only some incidents of harassment, on the other hand, yet sufficient to establish a claim that she herself was a victim of it. Her ignorance of other incidents, however, does not give the employer an immunity against her discovering and proving other incidents to show the nature and extent of its own knowledge about harassment in its workplace. The court thus finds relevancy in whatever knowledge Topeka State Hospital may have had about its allegedly hostile work environment. This finding appears consistent with the purposes of Title VII in "prophylactically stopping workplace discrimination in addition to compensating victims." *Hirase–Doi*, 61 F.3d at 784 (citing *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 417–18, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975)).

For the foregoing reasons the court overrules Defendants Kansas' and Topeka State Hospital's Motion for Protective Order (doc. 59). The court finds no valid basis to limit the scope of disclosure or discovery as defendants request.

The court next addresses Defendants Kansas' and Topeka State Hospital's Motion for

Protective Order Prohibiting Ex Parte Communications (doc. 60). Pursuant to Fed. R.Civ.P. 26(c), defendants thereby seek a protective order. Only by their memorandum, not in the motion itself, do they detail what kind of protective order they propose.

Notwithstanding the facial defect of the motion, the court will address the subject matter raised by its accompanying memorandum. Defendants seek a protective order to prohibit counsel for plaintiff from engaging in *ex parte* communications with both their present and former employees. Defendants state that counsel for plaintiff has engaged in such communications and will probably do so in the future, unless restrained. They rely upon the Model Rules of Professional Conduct, specifically M.R.P.C. 4.2 and the enforcement power of the court for the order they seek. In the alternative defendants request that plaintiff provide them with the names of all their employees, both current and former, together with a summary to indicate the date of the contact, subject matter discussed, and copies of any statements or other evidence obtained from such persons. They cite *Holdren v. General Motors Corp.*, 13 F.Supp.2d 1192 (D.Kan.1998) as authority for the alternative relief.

M.R.P.C. 4.2 prohibits a lawyer from communicating "about the subject of the representation with a party the lawyer knows to be represented by another lawyer to the matter, unless the lawyer has the consent of the other lawyer or is authorized by law to do so." Plaintiff concedes that her counsel has interviewed some past non-managerial employees of defendant Topeka State Hospital. She denies having violated M.R.P.C. 4.2. She also asserts that she and her counsel have no intention to violate the rule.

 Defendants rely upon Fed. R.Civ.P. 26(c) for a protective order. Rule 26(c), however, relates to discovery and disclosures. It does not authorize protective orders to regulate the conduct of parties and counsel in their collateral investigations independent of discovery and disclosure. Independent of the rule, the court may issue a protective order, if necessary to direct the conduct of a party or counsel. The court has inherent power to require adherence by counsel to applicable disciplinary rules. *See, e.g., Holdren, supra.* These include the Model Rules of Professional Conduct, as adopted by the Supreme Court of Kansas and by this Court in D.Kan. Rule 83.6.1.

 As the moving party, defendants bear the burden to demonstrate grounds for a protective order. They should show facts from which the court can find that a party or counsel is probably engaging or about to engage in the unethical conduct of which they complain. In this case they state by memorandum that counsel for plaintiff has made *ex parte* contacts with former and current employees of both defendants about the alleged hostile work environment at Topeka State Hospital. They specifically identify a number of former employees whom they believe should be covered by a protective order. The list includes some who have transferred their employment to other agencies of the State of Kansas and others no longer employed by defendants. It includes both managerial and non-managerial employees. Defendants state that counsel for plaintiff has refused their requests to refrain from future contacts with their employees.

In response plaintiff contends the proposed protective order would thwart her attempts to conduct legitimate discovery and fact-finding. She concedes that her counsel or his legal assistant have interviewed some former non-managerial employees of defendant Topeka State Hospital. She states the interviewer has always first inquired whether the interviewee had occupied a managerial position. If so, the interviewer immediately terminated the interview. Plaintiff denies that her counsel has conducted any *ex parte* interviews with present or former managerial employees. She argues that the contacts and interviews she has thus conducted do not violate M.R.P.C. 4.2. She avers that her counsel knows his ethical obligations and that a protective order would be redundant and unnecessary.

 The court does not find that plaintiff has committed any impropriety in interviewing former non-managerial employees of Topeka State Hospital. Defendants have not shown that any such person would

come within the meaning of the term "party", as that term is used in M.R.P.C. 4.2. They have provided neither by affidavit nor anything else of record any indication that plaintiff and her counsel have either done anything improper or are about to do so. The court does not find that the interviews with former non-managerial employees of defendant Topeka State Hospital violate M.R.P.C. 4.2. *Aiken v. Business and Industry Health Group, Inc.*, 885 F.Supp. 1474 (D.Kan.1995) provides sound reasoning against prohibiting such interviews. The court finds *Aiken* applicable. It finds nothing beyond speculation that counsel for plaintiff has committed any impropriety. Speculation does not constitute an adequate basis for a protective order.

The court further finds nothing of record to indicate that plaintiff has engaged in any misconduct or is about to do so with respect to possible *ex parte* interviews of current employees of defendants. M.R.P.C. 4.2 does prohibit such interviews about the subject matter of the litigation, if the interviewee is a member of that group of persons which would constitute a "party" within the meaning of M.R.P.C. 4.2. That definition does not apply, however, to every employee. That employees may have worked with the same persons as did plaintiff or may have knowledge about the subject matter of the case does not convert them into parties or party representatives whose statements have some binding effect upon defendants.

 The court finds no occasion, moreover, to expand the application of M.R.P.C. 4.2 to prohibit *ex parte* communications with all former and present employees of a party. The rule does not create a blanket of immunities against interviews with knowledgeable employees, only an ethical mandate that the attorney not interview any employee whose position equates with the employer as a party litigant. Rule 4.2 "does not apply to ban ex parte contact with former employees of an organizational party to the litigation that is represented by counsel." *Aiken*, 885 F.Supp. at 1475. With respect to communications with former employees, *Aiken* provides the following instructive analysis:

The court recognizes that a former employee could possess and reveal information which could potentially result in liability being imposed on an organization. The purpose of Rule 4.2, however, is not to prevent the flow of information, even if damaging to a party to the suit. To enlarge the scope of the rule hampers the broad discovery purposes contained in Federal Rule of Civil Procedure 26. In an era when easing or eliminating the unnecessary burdens and expense of litigation is widely viewed as desirable, this court is loath to create limitations on attorney communications which make the litigation process more difficult while providing little in the way of a corresponding benefit. *Cf. Cram*, 148 F.R.D. at 265 (citing *Goff*, 145 F.R.D. at 356) ("[R]estricting an attorney's ability to communicate with former employees strikes an unreasonable balance between protecting a relationship that does not exist and unduly restricting the need for litigants to have access to all relevant information. . . .").

885 F.Supp. at 1479.

Although distinguishable in several respects, *Chancellor v. Boeing Company*, 678 F.Supp. 250 (D.Kan.1988) provides guidance with respect to ethical restraints regarding communications with current employees of a party. It held that

[a] corporate employee is a 'party' under DR 7–104(A)(1) [ (the predecessor of M.R.P.C. 4.2) ] if he or she has managerial responsibility, his or her acts or omissions in connection with th[e] matter may be imputed to the corporation for purposes of civil or criminal liability, or his or her statements may be an admission on part of the organization.

*Id.* at 253. That definition remains applicable despite the adoption of M.R.P.C. 4.2 as the governing guideline. In fashioning the above definition, the *Chancellor* court adopted "the official comment to ABA Model Rule 4.2 as the definition of 'party' under DR 7–104(A)(1)." 678 F.Supp. at 253. As recognized in *Aiken*, ABA Model Rule 4.2 and M.R.P.C. 4.2 are identical. 885 F.Supp. at 1476. *Aiken* aside, the court finds *Chancellor* applicable to the extent it discusses the

ethical restraints against communications with current employees of a corporate party.

Defendants cite several cases in support of their motion. The court finds them either inapplicable or unpersuasive. As discussed in the preceding paragraph, *Aiken* should supercede *Chancellor* with regard to *ex parte* interviews with former employees of an opposing party. *Aiken* properly distinguishes *Chancellor* and refers to a history of Rule 4.2 which post-dates the earlier decision. The court, furthermore, finds the remainder of *Chancellor* inapplicable on the facts of the present motion. Defendants identify no current employees whom they believe should be covered by the proposed protective order. *Biocore Medical Technologies, Inc. v. Khosrowshahi,* 181 F.R.D. 660 (D.Kan.), *reversed on reconsideration on other grounds,* Nos. Civ.A. 98–2031–KHV and 98–2175–KHV, 1998 WL 919126 (D.Kan. Nov. 6, 1998) compares and contrasts *Chancellor* and *Aiken,* but did not choose between the two. It found instead that, regardless of which precedent applied, the moving parties had not sustained their burden to show that Rule 4.2 had been violated so as to require disqualification of an allegedly offending attorney. *Holdren, supra,* also cited by defendants, involved facts not present in the instant case. In that case the attorney for plaintiff had encouraged his client, still employed with defendant, to conduct ex parte interviews of its current managerial employees. As already noted, the court does not find that defendants have demonstrated either the reality or a threat of that kind of interview in this case.

For the foregoing reasons the court overrules the motion for a protective order to prohibit *ex parte* communications. Defendants have not met their burden to show reasonable grounds for such an order. The court will assume that plaintiff and her counsel will indeed, as promised, uphold their ethical obligations under M.R.P.C. 4.2 in this case. Inasmuch as the court has found Fed. R.Civ.P. 26(c) inapplicable to this motion, it finds no occasion for an award of expenses or attorney fees.

In summary, the court rules as follows: It sustains in part and overrules in part Plain-

tiff's Motion to Compel Discovery (doc. 55). It overrules the other three motions: Defendants Kansas' and Topeka State Hospital's Motion for Protective Order (doc. 59); Defendants Kansas' and Topeka State Hospital's Motion for Protective Order Prohibiting Ex Parte Communications (doc. 60); and Joint Request for Hearing on Plaintiff's Motion to Compel Discovery and Defendants' Motions for Protective Orders (doc. 80). It finds awards of expenses and fees unjustified and, therefore, denies them.

IT IS SO ORDERED.