**Marcus R. HAMMOND, Sr., Plaintiff,**

v.

**CITY OF JUNCTION CITY, KANSAS, et al., Defendants.**

No. CIV. A. 00–2146–JWL.

United States District Court,
D. Kansas.

July 10, 2001.

Denise M. Anderson, Kansas City, MO, Glenn B. Brown, Anderson & Assoc., LLC, Kansas City, MO, for Plaintiff.

Rebecca McGinnis, Michael A. Williams, Lathrop & Gage, L.C., Kansas City, MO, for Defendants.

## MEMORANDUM AND ORDER

WAXSE, United States Magistrate Judge.

This matter is before the Court on Defendants' Motion for Protective Order (doc. 31). The parties have submitted briefs, and an evidentiary hearing was held on April 3, 2001. Plaintiff appeared through counsel Denise Anderson and Glenn Brown. Defendants appeared through counsel Rebecca McGinnis. Defendant City of Junction City, Kansas (the "City") also appeared through its representative, City Manager Rodney Barnes.

## I. Nature of the Matter Before the Court

This is an employment discrimination case, which Plaintiff brings on behalf of himself and various present and past African American employees of the City. Plaintiff has yet to file his motion for class action determination, and, thus, the action has yet to be certified as a class action.

Defendants contend that at least one of Plaintiff's counsel has had improper ex parte contacts about this case with Al Hope, Sr., the Director of Human Relations for the City. Defendants contend that Mr. Hope is a managerial employee of the City and that the contacts were in violation of Kansas Rule of Professional Conduct 4.2,[1] which prohibits, *inter alia*, attorneys from engaging in certain ex parte communications with employees of a party organization who have managerial responsibilities on behalf of the organization.

Plaintiff's counsel, Glenn Brown and Denise Anderson, do not deny that they have had ex parte communications with Mr. Hope. Plaintiff's counsel do, however, deny that Mr. Hope is a managerial employee or that he otherwise falls within the scope of Rule 4.2. They further deny that any of the communications they had with Mr. Hope were communications about the "subject of the representation," as that term is used in Rule 4.2. They assert that the ex parte communications they had with Mr. Hope were initiated by Mr. Hope out of his desire to have them represent him in connection with his individual claims of employment discrimination against the City. Mr. Hope, who is African American, is a potential member of the putative class and has been identified by Plaintiff's counsel as a potential class representative.

Defendants move for a protective order to prevent Plaintiff's counsel from having any further ex parte discussions with Mr. Hope or with any other managerial employee of the City. They also request that the Court exclude from evidence any information that Plaintiff's counsel obtained through the ex parte discussions. In addition, they request that Plaintiff's counsel be disqualified from representing Plaintiff or any class members in this case.

The Court has examined the issues and the evidence presented. As is discussed in detail below, the Court holds, based on the testimony given and the exhibits provided at the April 3, 2001 hearing, that Plaintiff's counsel had ex parte communications with Mr. Hope in violation of Kansas Rule of Professional Conduct 4.2 and the rules of this Court. The Court will grant Defen-

---

**1.** The District of Kansas has adopted the Rules of Professional Conduct as adopted by the Kansas Supreme Court. *See* D.Kan. Rule 83.6.1(a).

dant's Motion for Protective Order in significant part.

## II. Procedural Background

Plaintiff brings this employment discrimination action against the City and various past and present City officials. He has filed the action on behalf of himself and current and former African–American employees of the City. The Complaint alleges that Defendants have discriminated against the employees on the basis of race in assignments, promotions, compensation, and training, and in the terms and conditions of employment. Complaint, ¶ 33 (doc. 1). Plaintiff asserts claims under Title VII of the Civil Rights Act of 1964, as amended; the Kansas Acts Against Discrimination; and 42 U.S.C. §§ 1981, 1983, 1985, and 1986. The parties have conducted discovery relating to class issues.

On March 2, 2001, the Court set the instant Motion for Protective Order for hearing and stayed all deadlines contained in the Scheduling Order, including the March 31, 2001 deadline for filing the motion for class certification. *See* Doc. 36. The evidentiary hearing was held on April 3, 2001.

## III. Duty to Confer

 Defendants' motion is entitled "Motion for Protective Order" and seeks a protective order pursuant to Fed.R.Civ.P. 26(c). Plaintiff asks the Court to summarily deny Defendants' Motion because Defendants failed to confer as required by Rule 26(c) and D. Kan. Rule 26.2. The Court does not find that conferring is required in this case, as it holds that Rule 26(c) is inapplicable. Rule 26(c) relates only to discovery and disclosures and "does not authorize protective orders to regulate the conduct of parties and counsel

in their collateral investigations independent of discovery and disclosure." *Turnbull v. Topeka State Hosp.*, 185 F.R.D. 645, 651 (D.Kan.1999). The Court nevertheless has the power to issue an order to direct the conduct of counsel and to require counsel's adherence to applicable disciplinary and ethical rules. *Id.* The Court will therefore consider the Motion.

## IV. Standard for Determining Whether to Limit Class Counsel from Communicating with a Potential Class Member

 This case presents special issues because it involves a putative class action. The United States Supreme Court has set forth a special standard for addressing when a court should grant an order limiting communications between counsel and potential class members. *See Gulf Oil Co. v. Bernard*, 452 U.S. 89, 101–02, 101 S.Ct. 2193, 68 L.Ed.2d 693 (1981). According to *Gulf Oil*, an order limiting communications between class counsel and potential class members must be "based on a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties." *Id.*, 452 U.S. at 101, 101 S.Ct. 2193. The record must show the particular abuses that have occurred or that are threatened, and the court's analysis "should result in a carefully drawn order that limits speech as little as possible, consistent with the rights of the parties under the circumstances." *Id.* at 102, 101 S.Ct. 2193. In making its determination, the court must take into account "that the rules of ethics properly impose restraints on some forms of expression." *Id.* at 104, n. 21, 101 S.Ct. 2193 (citing ABA Code of Professional Responsibility DR 7–104).[2]

**2.** DR 7–104 is substantially similar to the ethical rule at issue here, Kansas Rule of Professional Conduct 4.2.

With this standard in mind, the Court will proceed to make its findings of fact and conclusions of law.

## V. Findings of Fact

Plaintiff has submitted the affidavits of his counsel, Glenn Brown and Denise Anderson. The affidavits set forth the circumstances under which the communications between Mr. Hope, Mr. Brown, and Ms. Anderson took place and explain the substance of those communications. At the evidentiary hearing, the Court heard testimony from Mr. Hope regarding his job duties and employment with the City. The Court also heard testimony regarding Mr. Hope's job duties and employment from two City employees: (1) Rodney Barnes, the City Manager; and (2) Tricia Gowen, the City's Director of Administrative Services.

The Court also has before it Plaintiff's Motion for Extension of Time to File Motion for Class Certification (hereinafter referred to as "Motion for Extension of Time") (doc. 28).[3] The motion indicates that Plaintiff's counsel conferred with Al Hope, Sr., on at least two occasions and sets forth certain information that Plaintiff's attorneys claim to have learned from Mr. Hope.

Based on the affidavits of Glenn Brown and Denise Anderson, the evidence presented at the April 3, 2001 hearing, and the matters pled in the above-cited Motion for Extension of Time, the Court makes the following factual findings.

## A. Communications Between Plaintiff's Counsel and Sr., and the Information Obtained

1. In early December 2000, a person identifying himself as Al Hope called the law firm of Plaintiff's counsel and asked to speak to counsel Glenn Brown. Because Mr. Brown was unavailable, the receptionist took a message. Brown Aff., ¶ 5, attached as Ex. A to doc. 32. Mr. Brown did not return Mr. Hope's call because he knew that Mr. Hope worked in the City's Human Resources Department and he was unable to conclusively determine whether Mr. Hope was a managerial employee. *Id.*, ¶ 6.

2. Mr. Hope called Mr. Brown again, toward the end of January 2001. Mr. Hope asked Mr. Brown if he would represent him in a race discrimination lawsuit he wanted to file against the City. Mr. Brown informed Mr. Hope that he represented Mr. Hammond in this case and that he (Mr. Hope) might be a member of the class action, if the Court certified the matter. *Id.*, ¶ 8. Mr. Hope and Mr. Brown "discussed generally his rights and ability to be represented as an individual or to elect not to be a member of this class action." *Id.* In response, Mr. Hope "stated he was aware of this case and our services and understood fully the potential conflict of interest." *Id.*

3. During this telephone call, Mr. Brown told Mr. Hope about his concerns that he was a City employee with managerial responsibility. Mr. Hope informed Mr. Brown that he was employed by the City as the Human Relations Director and that he reported to the City Manager. He stated that during his entire period of employment with the City (beginning in 1995) he served as the City's "EEO" and as the Secretary for the Human Relations Board. He explained that he was and is "responsible for areas such as recruitment, employee and labor relations, safety and

---

**3.** The Court has already ruled on the Motion for Extension of Time, and the merits of that motion are not at issue here. The Motion for Extension is, however, relevant to the instant Motion for Protective Order, as it contains information about the substance of the communications between Mr. Hope and Plaintiff's counsel.

workers compensation programs, and investigating complaints of discrimination." *Id.*, ¶ 9. He stated that despite his current title, "he had not performed the functions of a manager but carried out the specific duties assigned to him by the City Manager." *Id.* He specifically denied having any management or policymaking responsibility. *Id.*

4. Mr. Hope further informed Mr. Brown that he had recently been given the title of Director of Human Relations. Prior to that, he had been the Acting Director of Human Resources. Mr. Hope told Mr. Brown that while serving as Acting Director of Human Resources he had not been given the full authority and responsibilities held by the previous Director of Human Resources. He indicated that while serving as Acting Director of Human Resources he had been disciplined for sending memos to City Department Heads, he was not allowed to participate in staff meetings, and he had been ordered to plan the elimination of the Human Resources Department by creating two separate departments. *Id.*, ¶ 10.

5. Based on this information, Mr. Brown determined that Mr. Hope did not have managerial responsibilities on behalf of the City and that he was not an employee within the scope of the "managing-speaking agent" test. *Id.*, ¶ 11.

6. Mr. Hope met in person with Mr. Brown on January 22, 2001. *Id.*, ¶ 16. Denise Anderson, who is also representing Plaintiff in this action, was present for all or part of that meeting. Anderson Aff., ¶ 5, attached as Ex. B. to doc. 32.

7. At the January 22 meeting it became clear to Mr. Brown that Mr. Hope "was seeking legal representation as an individual and as a potential class representative of similarly situated minorities. It appeared he was contemplating his individual rights and whether he would be a class member in this class action." Brown Aff., ¶ 17.

8. During the January 22 meeting, "Mr. Hope informed Mr. Brown of facts and circumstances surrounding his [alleged] recent denial of a promotion and additional facts relating to other allegations of discrimination against him and other minorities who worked for Junction City." *Id.*, ¶ 17.

9. At the January 22 meeting, Ms. Anderson presented to Mr. Hope her law firm's standard fee agreement, which Mr. Hope signed. Anderson Aff., ¶ 5. The record does not reveal whether Ms. Anderson was present for all or only a part of the January 22 meeting with Mr. Hope.

10. After the January 22 meeting, Mr. Brown telephoned defense counsel Michael Williams and left him a voice mail message indicating that Mr. Hope had retained Mr. Brown's firm to represent him in another race discrimination suit against the City. He also indicated that Mr. Hope might be named as an additional class representative. Brown Aff., ¶¶ 21, 22.

11. On February 1, 2001, Mr. Williams left Mr. Brown a voice mail message that Defendants objected to Mr. Hope being named a class representative. *Id.*, ¶ 23.

12. On February 2, 2001, Mr. Brown and Mr. Hope met again, to review the discrimination charge that Mr. Brown had prepared and to further discuss Mr. Hope's claims of individual discrimination. Brown Aff., ¶ 26. Mr. Hope informed Mr. Brown at this meeting that he had allegedly "become aware that some temporary employees hired by the city to copy personnel files were shredding documents from various files." *Id.*, ¶ 31. During this meeting, Mr. Brown "realized [that] documents relevant to this case [allegedly] had not been produced." *Id.*, ¶ 30.

13. At either the January 22 or February 2 meeting,[4] Mr. Brown "interviewed Mr. Hope to determine the extent of his involvement in this case . . . and asked Mr. Hope to explain his participation in the document production." Plaintiff's Sur Reply to Motion for Protective Order (doc. 39) at 7. Mr. Hope had been listed as one of three individuals who had assisted in preparing the City's responses to Plaintiff's First Interrogatories, which were served on Plaintiff on January 2, 2001. Brown Aff., ¶ 13. Mr. Hope explained to Mr. Brown that his "assistance" in preparing those responses had amounted only to providing some documents such as affirmative action plans and minutes of Human Relations Board minutes, in response to a request by the City Attorney. *Id.,* ¶ 14.

14. At some point in time (exactly when is unclear from the record), Mr. Brown "briefed" Ms. Anderson "on the issues in Mr. Hope's potential case against Junction City," which led her to "determine[ ] some of the issues in Mr. Hope's case might overlap with the issues in this case." Anderson Aff., ¶ 13.

15. On February 6, 2001, Plaintiff filed a Motion for Extension of Time to File Motion for Class Certification (doc. 28). In that motion, Plaintiff stated that the law firm representing Plaintiff in this case had been retained to represent Mr. Hope and that counsel had filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Kansas Human Rights Commission ("KHRC"). The motion stated that "Mr. Hope's charge of discrimination alleges class-wide discrimination against all minority employees of Junction City" and that "[m]any of the issues raised by Mr. Hope are included in this action." *Id.* at p. 1.

16. The Motion for Extension of Time also stated that in meeting with Mr. Hope on February 2, 2001, Plaintiff's counsel "discovered employees of Junction City [had] allegedly shredded files relating to this case after [Plaintiff] filed this action." *Id.* at p. 2. The motion also stated that during the February 2 meeting, Plaintiff's counsel "learned that documents and other information requested in this case pursuant to written discovery have not been produced although the evidence is readily available to be produced." *Id.*

17. At a February 8, 2001 status conference with the undersigned Magistrate Judge, defense counsel orally raised the issue of Plaintiff's counsel's communications with Mr. Hope. In accordance with the Court's instructions to file a pleading on the issue, Defendants filed the instant Motion for Protective Order on February 14, 2001.

18. At no time did Mr. Brown solicit or initiate contact with Mr. Hope. Brown Aff., ¶ 41.

19. Mr. Hope and Plaintiff Marcus Hammond, Sr., are the only City employees with whom Mr. Brown has had any ex parte communications since the filing of the instant lawsuit. *Id.,* ¶ 39.

20. While Ms. Anderson's affidavit is silent on these points, there is nothing in the record that would lead the Court to believe that Ms. Anderson solicited or initiated contact with Mr. Hope or that she has had any ex parte communications with any City employees other than Mr. Hope or Plaintiff Hammond.

**B. Mr. Hope's Duties and Status as a City Employee**

1. Mr. Hope began his employment with the City in 1995 as Human Relations

---

4. It is not clear from Mr. Brown's affidavit or Sur Reply at what point in time Mr. Brown conducted this "interview." It appears, however, that it must have taken place during the January 22 meeting or the February 2 meeting.

Tech. He was promoted to the position of Human Relations Officer in July 1997. He was a "Grade 23 in that position." Testimony of Al Hope, Sr., and Rodney Barnes.

2. The City created its Human Resources Department in 1997. In August 2000, Mr. Hope was promoted to the position of Acting Human Resources Director, when the Human Resources Director, Bill Spear resigned. Upon his promotion, Mr. Hope's grade was increased from a "Grade 23" to a "Grade 25." Testimony of Al Hope, Sr., and Rodney Barnes.

3. The City's director-level employees are generally ranked "Grade 25." Non-director employees who have managerial duties may be classified lower than a "25." Testimony of Al Hope, Sr., and Rodney Barnes.

4. In December 2000, the City divided the Human Resources Department into two new departments: Human Relations and Administrative Services. Mr. Hope was promoted to the position of Director of Human Relations effective December 25, 2000. He remained a "Grade 25." Mr. Hope still held the Director of Human Relations position at the time of the April 3, 2001 evidentiary hearing. Testimony of Al Hope, Sr., and Rodney Barnes.

5. As Human Relations Director, Mr. Hope reports directly to the City Manager, as do the other Department Heads and directors. Testimony of Al Hope, Sr., and Rodney Barnes.

6. Throughout his tenure, Mr. Hope has also sat on numerous hiring panels. A hiring panel is comprised of City employees and citizens. The panel's role is to interview applicants for various jobs and make recommendations to the hiring authority about who should be hired. The City Manager was not aware of any instance where the hiring authority failed to follow a panel's recommendation. Testimony of Rodney Barnes.

7. In addition, throughout his tenure, Mr. Hope has held the position of Secretary for the City Human Relations Board. In that position he investigates discrimination complaints brought by citizens relating to housing and public accommodations. After conducting an investigation, Mr. Hope determines whether probable cause exists to find that discrimination occurred. Before making that determination, he may consult with the EEOC, the KHRC, or other Human Relations Board members. He submits a written probable cause/no probable cause determination to the Human Relations Board, and the Board takes official action on the complaint. The Board has never disregarded or changed any determination he has made. Mr. Hope investigates approximately five to seven complaints per year. Race discrimination complaints are the most common. Mr. Hope characterizes his role as Secretary of the Board as more than just an investigator—he is also the Board's "technical and legal advisor." Testimony of Al Hope, Sr.

8. As Director of Human Relations, Mr. Hope has the authority to investigate internal discrimination and harassment complaints brought by employees of the City. He also has the responsibility to ensure internal compliance with the discrimination laws. If he finds that discrimination has occurred, he makes a recommendation to the City Manager as to what action the City should take. Testimony of Al Hope, Sr.

9. Rodney Barnes, who has been City Manager since February 2000, and Acting City Manager from August 1999 to February 2000, has always followed Mr. Hope's recommendations regarding discrimination complaints. Testimony of Rodney Barnes.

10. As Director of Human Resources, Mr. Hope has trained managers and staff in such areas as diversity and sexual

harassment. Testimony of Al Hope, Sr., and Rodney Barnes.

11. Mr. Hope is responsible for preparing and updating the City's Affirmative Action Plan, which includes compiling the statistical information and drafting the various policy statements contained therein. He also monitors compliance with the Affirmative Action Plan and reviews the Plan on an annual basis, making adjustments to the Plan as needed. Mr. Hope is "school trained to do affirmative action plans," and affirmative action plans are one of his areas of expertise. Testimony of Al Hope, Sr.

12. In addition to his affirmative action duties, Mr. Hope maintains a job description book and reviews job descriptions for employees in other departments. If a description contains a job requirement that he does not think is a bona fide occupational qualification, he will discuss that requirement with the Department Head. Testimony of Al Hope, Sr.

13. Mr. Hope admitted during the evidentiary hearing that he has performed the majority of the "Essential Duties" listed in the position description for the Human Relations Director dated November 17, 2000 (Def.Ex.408). Testimony of Al Hope, Sr. The list of "Essential Duties and Responsibilities" contained in that position description covers almost three pages and identifies forty-three duties, all of which the Court finds are managerial duties. The list includes such duties as: receiving complaints alleging discrimination in employment, housing, and public accommodations; interviewing complainants to determine whether a prima facie case can be established; advising complainants regarding their rights to file complaints; counseling prospective complainants regarding local, state and federal laws; administering the City's Contract Compliance Policy pertaining to affirmative action on public contracts and equal employment

opportunity; mediating disputes between or with contractors relative to compliance with Affirmative Action; conducting public education for City supervisory staff members, the business community, and the general public on equal employment opportunity; reviewing job descriptions and recommending classification grades and updates as needed for all City employees; coordinating training programs for City employees; and advising and assisting Department Heads and supervisors in the disciplinary process. Def. Ex. 408.

14. The City Manager, Rodney Barnes, also testified that Mr. Hope performed the duties listed in the Human Relations Director position description. The City Manager conducted Mr. Hope's annual performance evaluation in late February of this year, and in conducting that evaluation, Mr. Barnes reviewed the position descriptions for the various positions Mr. Hope held during the covered time period (February 1, 2000 through January 31, 2001), including the description for his Human Relations Director position. Mr. Barnes determined that Mr. Hope was actually performing the duties listed. Testimony of Rodney Barnes.

15. In addition, Mr. Hope sent a memorandum to Mr. Barnes in early February 2001 providing information about his performance during the evaluation period. Testimony of Al Hope, Sr.; Def. Ex. 412. In that memorandum, Mr. Hope stated that he had "[m]ediated complaints against City (internally and externally)." Def. Ex. 412.

16. In the February 2001 memorandum, Mr. Hope also stated that he had accomplished "all goals listed in the 2000[B]udget Report to City Commission." *Id.* The goals listed in that Budget Report (for the Human Relations Division) included the following: monitoring City-wide hiring for compliance with EEO guidelines;

assisting with complaints alleging unlawful discrimination in employment, housing, and public accommodations; assisting the City in complying with state and federal funding mandates; conducting investigations of formal complaints alleging violations of City ordinances; and conducting public education for supervisory staff, the business community, and the general public on equal employment opportunity, affirmative action and cultural diversity. Def. Ex. 409, p. 126.

17. As Human Relations Director, Mr. Hope supervises the other employees in the Human Resources Department. He is also responsible for managing the Human Resources Department and has the *authority* to make hiring decisions for the Department. He has not, however, had any occasion to *actually make* such decisions. Testimony of Al Hope, Sr., Rodney Barnes, and Tricia Gowen.

18. Mr. Hope testified that he did not believe he was given the same authority as the previous Director to carry out his duties as Director of Human Resources. He also testified that he believed he was not given all of the duties that the previous Director had been given. Testimony of Al Hope, Sr.

19. Mr. Hope testified that he assisted the City Attorney in preparing answers to several of the interrogatories submitted by Defendants to Plaintiff in this case. Testimony of Al Hope, Sr.

## VI. Conclusions of Law

The first issue this Court must decide is whether Plaintiff's counsel's ex parte communications with Mr. Hope violated Rule 4.2 of the Kansas Rules of Professional Conduct, which this Court has adopted as the applicable standard of professional conduct. *See* D.Kan. Rule 83.6.1(a) (adopting the Rules of Professional Conduct as adopted and amended by the Kansas Supreme Court). If the Court determines

that Rule 4.2 was violated, the Court must then decide whether any exception should apply because (1) Mr. Hope was a potential member of the putative class, or (2) Mr. Hope, rather than Plaintiff's counsel, initiated the ex parte contacts. If no exception is found to apply, the Court will address what relief, if any, Defendants are entitled to obtain.

### A. Did Plaintiff's Counsel Violate Rule 4.2 by Engaging in Ex Parte Communications with Al Hope, Sr.?

#### 1. The applicable ethical rule—Kansas Rule of Professional Conduct 4.2

Kansas Rule of Professional Conduct 4.2, as adopted by the Kansas Supreme Court and this Court, states as follows:

> In representing a client, a lawyer shall not communicate about the subject of the representation with a party the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized by law to do so.

Kan. S.Ct. Rule 226 at Rule 4.2.

The comment to Rule 4.2 explains how the Rule is to be applied to organizations. It states:

> In the case of an organization, this Rule prohibits communications by a lawyer for one party concerning the matter of representation with persons having a managerial responsibility on behalf of the organization, and with any other person whose act or omission in connection with that matter may be imputed to the organization for purposes of civil or criminal liability or whose statement may constitute an admission on the part of the organization.

*Id.*, cmt.

The Kansas Supreme Court has adopted in principle the comments accompanying Rule 4.2 "[t]o the extent that they are not

inconsistent with" the Model Rules of Professional Conduct, as adopted by the Kansas Supreme Court, or inconsistent with the statutory or case law of Kansas. *See* Kan. S.Ct. Rule 226 (prefatory rule). This Court has held that the above-cited comment to Rule 4.2 "is consistent with the rule to the extent the comment explains which people involved with an organizational party constitute 'parties' for purposes of the rule." *Holdren v. General Motors Corp.*, 13 F.Supp.2d 1192, 1194 (D.Kan.1998) (Lungstrum, J.).

**2. Did Plaintiff's counsel's communications with Al Hope, Sr., fall within the scope of Rule 4.2?**

*a. Did Plaintiff's counsel and Al Hope, Sr., communicate "about the subject of the representation"?*

Rule 4.2 only prohibits communications "about the subject of the representation." Judge Vratil has ruled that " 'the subject matter of the representation' in a litigated matter is not limited to the merits of the various claims; it includes the entire litigation process." *Biocore Medical Techs., Inc. v. Khosrowshahi*, 181 F.R.D. 660, 671 (D.Kan.1998) (Vratil, J.). In *Biocore*, counsel telephoned an opposing party to schedule a deposition. Judge Vratil ruled that because the telephone conversation concerned the litigation, it was "about the subject of the representation." *Id.* Thus, even though the ex parte communication dealt only with scheduling a deposition and did not deal with the merits of the case, it was an improper ex parte contact in violation of Rule 4.2. *Id.*

Applying this rule to the instant case, the Court finds that Mr. Brown and Mr. Hope did in fact communicate "about the subject of the representation." By Mr. Brown's own admission, he and Mr. Hope discussed Mr. Hope's "participation in the document production" in this case. Plaintiff's Sur–Reply to Motion for Protective order (doc. 39) at 7. Mr. Brown knew that Mr. Hope was listed as one of the three individuals who had assisted in preparing the City's responses to Plaintiff's First Interrogatories in this case. Brown Aff., ¶ 13. Mr. Brown asked Mr. Hope about his "assistance" in preparing those responses, and Mr. Hope told him that he had provided certain documents in response to a request by the City attorney. *Id.*, ¶ 14. While this discussion did not go to the merits of this case, it certainly dealt with part of the "litigation process." Under the rule set forth in *Biocore, supra*, it should be deemed to be "about the subject of the representation."

Mr. Hope and Mr. Brown also discussed the alleged shredding of documents relating to this case. *See* Plaintiff's Motion for Extension of Time, doc. 28 at 2 (in meeting with Mr. Hope on February 2, 2001, Mr. Brown "discovered employees of Junction City [had] allegedly shredded files *relating to this case* after [Plaintiff] filed this action") (emphasis added); Brown Affidavit, ¶ 31 (Mr. Hope informed Plaintiff's counsel that "some temporary employees hired by the city to copy personnel files were shredding documents from various files"). Mr. Hope and Mr. Brown also apparently discussed matters through which Mr. Brown "learned that documents and other information requested *in this case* pursuant to written discovery have not been produced although the evidence is readily available to be produced." Plaintiff's Motion for Extension of Time, doc. 28 at 2 (emphasis added). Clearly, these discussions about the alleged shredding of documents and the document production concerned the "litigation process" in this case, and, under *Biocore*, they should be deemed to be "about the subject of the representation."

In addition, Mr. Hope and Mr. Brown discussed Mr. Brown's "ability to . . . elect not to be a member of *this class action* ."

Brown Aff., ¶ 8 (emphasis added). Such a discussion clearly related to a procedural matter involved in this case, and, thus, under *Biocore*, related to the litigation process and should be deemed "about the subject of the representation."

Furthermore, Mr. Brown and Mr. Hope discussed not only Mr. Hope's claims of discrimination but also the claims of discrimination of other City employees, *i.e.*, the claims of other potential class members. Mr. Brown admits that during the January 22 meeting, Mr. Hope informed him "of facts and circumstances surrounding his [alleged] recent denial of a promotion and additional facts relating to other allegations of discrimination against him and other minorities who worked for Junction City." Brown Aff., ¶ 17.

For the foregoing reasons, the Court holds that Mr. Brown had several communications with Mr. Hope about the "subject of the representation" within the meaning of Rule 4.2. It is not clear whether Ms. Anderson also had communications with Mr. Hope about the "subject of the representation." The only specific information before the Court is that Ms. Anderson was present during at least part of the January 22, 2001 meeting with Mr. Hope and that she presented to Mr. Hope the firm's standard fee agreement. *See* Anderson Aff., ¶ 5. The record does not reveal whether Ms. Anderson was present during that part of the January 22 meeting when any of the above-referenced matters about the subject of the representation were discussed.

For purposes of this Motion, it is not necessary that the Court make a specific finding as to whether Ms. Anderson also engaged in any ex parte communications with Mr. Hope about the subject of the representation since it is clear that her associate, Mr. Brown, did. The Court does note, however, that at the very least, Ms. Anderson was aware of the nature of at least some of the discussions that Mr. Brown was having with Mr. Hope. Her affidavit states that she was "briefed" by Mr. Brown "on the issues in Mr. Hope's potential case against Junction City," which led her to "determine [that] some of the issues in Mr. Hope's case might overlap with the issues in this case." *Id.*, ¶ 13. In addition, she was aware, or at least constructively aware, of the matters pled in the Motion for Extension of Time regarding the alleged shredding of documents.

Given that at least one of Plaintiff's counsel, Glen Brown, had ex parte communications with Mr. Hope "about the subject of the representation," the Court will proceed to determine whether those communications were prohibited under Rule 4.2. That determination turns on whether Mr. Hope is a person who falls within the scope of the comment to Rule 4.2.

*b. Was Al Hope, Sr., a person within the scope of the comment to Rule 4.2?*

Rule 4.2 prohibits communications with "a *party* the lawyer knows to be represented by another lawyer in the matter." (Emphasis added.) As noted above, when the "party" at issue is an organization, counsel is prohibited from communicating with the following three categories of persons:

1. A person having "a managerial responsibility on behalf of the organization"; *or*

2. A person "whose act or omission in connection with that matter may be imputed to the organization for purposes of civil or criminal liability"; *or*

3. A person whose statement "may constitute an admission on the part of the organization."

Kan. S.Ct. Rule 226 at Rule 4.2 cmt. *Accord Holdren v. General Motors Corp.*, 13

F.Supp.2d 1192, 1194 (D.Kan.1998) (citing same).

The Rule bans ex parte communications with these three categories of employees because their positions "equate[ ] with the employer as a party litigant." *Turnbull v. Topeka State Hosp.*, 185 F.R.D. 645, 652 (D.Kan.1999). The three categories identified in the comment provide guidance to the court in determining which people employed by the organization "occupy a status or play a role sufficient to take on the attributes of the party itself." *Holdren,* 13 F.Supp.2d at 1194.

■ In interpreting Rule 4.2 and its comment, the Tenth Circuit has held that a court may also apply the so-called "speaking authority test." *See Weeks v. Independent School Dist. No. I–89*, 230 F.3d 1201, 1214 (10th Cir.2000). An employee has "speaking authority" if the employee "could bind the [organization] in a legal evidentiary sense." *Id.* at 1208–09 (citing with approval *Chancellor v. Boeing Co.,* 678 F.Supp. 250, 252–54 (D.Kan.1988) (J. Crow)). The relevant inquiry is similar to the inquiry made under Fed.R.Evid. 801(d)(2)(D). *Weeks,* 230 F.3d at 1209. That inquiry is twofold: (1) does the employee have managerial authority over at least some of the issues in the underlying litigation; and (2) did the employee make a statement, during the existence of the employment relationship, concerning a matter within the scope of the employment. *Id.* at 1210–11.

Applying these rules here, the Court holds that Mr. Hope is a person who falls within the scope of Rule 4.2 in two respects. First, he falls within the first category of persons described in the comment to Rule 4.2 as having managerial responsibilities on behalf of the organization. Second, he has "speaking authority" so as to bind the City.

*(1) Mr. Hope has managerial responsibilities.*

Neither Rule 4.2 nor its comment defines the term "managerial responsibility." The parties have not directed the Court to any cases defining the term, and the Court has been unable to locate any case law defining the term or setting forth the factors that the Court should consider. One court has noted, however, that "the parameters of the term 'managerial responsibility' are unclear." *Palmer v. Pioneer Hotel and Casino,* 19 F.Supp.2d 1157, 1162 (D.Nev.) (citing *Carter–Herman v. City of Philadelphia,* 897 F.Supp. 899, 903–04 (E.D.Pa.1995) (finding that police captains and lieutenants have managerial responsibility because they "exercise significant individual judgment and discretion outside of established policies and procedures," but that police sergeants do not have managerial responsibility, even though they supervise others, because their work is guided by departmental rules and regulations); *Orlowski v. Dominick's Finer Foods, Inc.,* 937 F.Supp. 723, 728 (N.D.Ill.1996) (holding that hiring, scheduling work shifts, and recommending terminations are managerial responsibilities); *Terra Int'l Inc. v. Mississippi Chemical Corp.,* 913 F.Supp. 1306, 1321 (N.D.Iowa) (holding that supervisor of shipping department who oversaw seven employees was "managerial level" employee); *Berryman v. Consolidated Rail Corp.,* Civ. A. No. 94–3668, 1995 WL 517642, at *2 (E.D.Pa. Aug. 28, 1995) (finding, in conclusory manner, that plaintiff's foreman had managerial responsibility)). *See also Hill v. St. Louis Univ.,* 123 F.3d 1114, 1121 (8th Cir.1997) (upholding district court's ruling that chairman of aerospace technology department at college performed managerial duties).

The Court does not deem it necessary to define the full parameters of the term "managerial responsibility" in this case. A

"manager" is generally defined as "[a] person who administers or supervises the affairs of a business, office or other organization," Black's Law Dictionary 971 (7th ed.1999), or as "a person that conducts, directs, or supervises something," Webster's Third New International Dictionary 1372 (1993).

Relying on this general, common-sense definition of "manager," the Court easily finds that Mr. Hope has numerous managerial responsibilities on behalf of the City. As Director of Human Resources, he supervises the other employees in the Human Resources Department. He is responsible for managing the Human Resources Department and has the *authority* to make hiring decisions for the Department, although he has yet to *actually make* any such hiring decisions. Testimony of Al Hope, Sr., Rodney Barnes, and Tricia Gowen. He acts as Secretary for the City Human Relations Board, and in that position he investigates discrimination complaints brought by citizens relating to housing and public accommodations. He also determines whether probable cause exists to find that discrimination occurred. He is, in his own words, the Board's "technical and legal advisor." He sits on various hiring panels and makes hiring recommendations to various City hiring authorities. In addition, Mr. Hope is responsible for preparing and updating the City's Affirmative Action Plan, which includes compiling the statistical information and drafting the various policy statements contained therein. He also monitors compliance with the City's Affirmative Action Plan. He reviews the City's Affirmative Action Plan on an annual basis and makes adjustments to the Plan as needed. Testimony of Al Hope, Sr.

In addition, Mr. Hope is responsible for investigating internal discrimination and harassment complaints brought by City employees. He monitors City-wide hiring for compliance with EEO guidelines and works to ensure internal compliance with the discrimination laws. If he finds that discrimination has occurred, he makes a recommendation to the City Manager that the City take certain action. The City Manager has historically followed those recommendations. Testimony of Al Hope, Sr.

Mr. Hope also trains managers and staff in such areas as diversity and sexual harassment. He conducts public education for the business community and the general public on equal employment opportunity, affirmative action, and cultural diversity. In addition, he maintains a job description book and reviews job descriptions for employees in other departments. If a description contains a job requirement that he does not think is a bona fide occupational qualification, he will discuss that requirement with the Department Head. Testimony of Al Hope, Sr..

These are all clearly managerial responsibilities. That Mr. Hope believes he has been given less authority to carry out his duties than the previous Human Resources Director does not detract from the fact that he does have, and does carry out, many managerial duties in his position.

In light of the foregoing, the Court holds that Mr. Hope is a person who has managerial responsibilities on behalf of the City and that he falls within the scope of Rule 4.2.

*(2) Mr. Hope has "speaking authority" on behalf of the City.*

The Court also holds that Mr. Hope meets the two-fold test for having "speaking authority" so as to bind the City in a legal, evidentiary sense. *See Weeks,* 230 F.3d at 1210–11. First, he clearly has managerial authority over crucial issues in the underlying litigation relating to discrimination and affirmative action. Sec-

ond, he has made statements, during his employment with the City, concerning matters within the scope of his employment. As noted above, while employed by the City, he discussed with Mr. Brown allegations of discrimination involving minority employees who worked for the City. Brown Aff., ¶ 17. He also told Mr. Brown that City employees had allegedly shredded personnel files relating to this case. *See* Plaintiff's Motion for Extension of Time, doc. 28 at 2.

In sum, the Court holds that at least one of Plaintiff's counsel, Glenn Brown, had ex parte communications "about the subject of the representation" with a person who falls within the scope of Rule 4.2.

### 3. Should any exception apply so as to take their communications outside the scope of Rule 4.2?

The Court will now proceed to determine whether an exception should apply to take the ex parte communications outside the scope of the Rule because (1) Mr. Hope is a potential member of the putative class; (2) Mr. Hope and Plaintiff's counsel formed an attorney-client relationship with respect to his individual claims of discrimination; or (3) it was Mr. Hope, rather than Plaintiff's counsel, who initiated the contact.

#### a. *Exception based on Mr. Hope being a potential member of the putative class*

█ Plaintiff's counsel argue that Rule 4.2 should not apply here because Mr. Hope is a potential member of the putative class of African American employees of the City. They argue that because Mr. Hope is a putative class member, an exception should allow them—in their capacity as class counsel—to discuss with Mr. Hope his individual allegations of race discrimination. The Court is not persuaded by this argument. Plaintiff has not provided any case law supporting such an argument and the Court has found none.

█ To accept Plaintiff's argument, the Court would have to find that an attorney-client or other special relationship (which Plaintiff's counsel characterize as a fiduciary relationship) existed between Mr. Hope and Plaintiff's counsel so as to take their communications outside the scope of Rule 4.2. Here, the class has yet to be certified. It is fairly well-settled that *prior to* class certification, no attorney-client relationship exists between class counsel and the putative class members. *See, e.g., Garrett v. Metropolitan Life Ins. Co.*, No. 95CIV2406 PKL, 1996 WL 325725, *6 (S.D.N.Y. June 12, 1996); *Montgomery v. Aetna Plywood, Inc.*, No. 95C3193, 1996 WL 189347 (N.D.Ill. April 16, 1996), *op. on reconsideration*, at *3 (July 21, 1996); *Fulco v. Continental Cablevision, Inc.*, 789 F.Supp. 45, 46–47 (D.Mass.1992); *Bower v. Bunker Hill Co.*, 689 F.Supp. 1032, 1033 (E.D.Wash.1985); *Resnick v. American Dental Ass'n*, 95 F.R.D. 372, 376–77 & n. 6 (N.D.Ill.1982). *Cf.* Manual for Complex Litigation, § 30.2 at p. 234 (3d ed.1995) (once class is certified, the ethical rules governing communications apply because each class member is deemed a client of class counsel). Here, no attorney-client relationship existed between Plaintiff's counsel and Mr. Hope by virtue of his being a potential member of the putative class.

Furthermore, it is only speculation at this point in time that a class will be certified. Even if a class is eventually certified, the class might be defined so as not to include Mr. Hope. It is also possible that Mr. Hope might decide to opt-out of the class.

For the foregoing reasons, the Court holds that no exception for Rule 4.2 should apply here based on the argument that an attorney-client or other special relationship existed Plaintiff's counsel and Mr. Hope because he was a potential class member.

### b. Exception based on attorney-client relationship formed in connection with Mr. Hope's individual claims

 The Court also holds that no exception to Rule 4.2 should apply based on any attorney-client relationship formed as a result of Mr. Hope's apparent desire to be *individually* represented by Plaintiff's counsel. Admittedly, Mr. Hope and Plaintiff's counsel did eventually form an attorney-client relationship in connection with Mr. Hope's *individual* claims of race discrimination. But that relationship was only created as a result of the improper ex parte communications with Mr. Hope. From the *very first conversation* with Mr. Hope, Mr. Brown knew, or at the very least, should have known, that Mr. Hope had managerial responsibilities on behalf of the City that rendered him off-limits. At that point, no further ex parte communications should have ensued. Had no further ex parte communications taken place, no attorney-client relationship would have been created.

In light of the above, the Court holds that no exception to Rule 4.2 should apply here based on the attorney-client relationship that was formed between Plaintiff's counsel and Mr. Hope.

### c. Exception based on fact that Mr. Hope initiated the contact with Plaintiff's counsel

 Plaintiff's counsel also argue that Rule 4.2 should not apply here because it was Mr. Hope, and not Plaintiff's counsel, who initiated the contact. Such an argument is not persuasive. Nothing in Rule 4.2 restricts the prohibition to solicitations or the initiation of a communication. Rather, the Rule contains a blanket prohibition against covered communications: "[A] lawyer *shall not communicate* about the subject of the representation with a party . . . ." Kansas Rule of Professional Conduct 4.2 (emphasis added). Similarly, the comment to Rule 4.2 states that the Rule "*prohibits communications* by a lawyer for one party concerning the matter of representation." *Id.,* cmt. (emphasis added). Both the Rule and comment are concerned with *all* communications and not just those that are initiated or solicited by counsel.

Accordingly, the Court holds that the Rule makes no exception for contacts that are initiated by the party represented by counsel. Rule 4.2 therefore applied to prohibit their communications.

In sum, the Court has determined that Plaintiff's counsel had communications with Mr. Hope in violation of Rule 4.2 and that no special exceptions to that rule applied. The Court will now proceed to determine what remedy, if any, is appropriate for counsel's violation of Rule 4.2.

### B. What Remedy Is Appropriate for Plaintiff's Counsel's Violation of Rule 4.2?

### 1. The remedies sought by Defendants

Defendants seek a protective order providing for the following:

(a) Plaintiff's counsel are disqualified and removed from any further involvement with this litigation;

(b) Plaintiff's counsel are ordered to immediately cease and desist their ex parte contacts of Mr. Hope and any other City managerial personnel regarding this case;

(c) Plaintiff is ordered to immediately produce to Defendants (i) a list of all City managerial employees contacted by Plaintiff or his counsel since the filing of this lawsuit; (ii) a detailed summary of all such communications: and (iii) all statements and affidavits obtained from current managerial City employees;

(d) All evidence from any such ex parte contacts is excluded from evidence in this case; and

(e) Defendants are awarded sanctions, including the costs and fees they have incurred in filing the Motion for Protective Order.

### 2. The standard for fashioning a remedy for violation of Rule 4.2 under these circumstances

As noted above in Part IV, this Court has the power to issue an order to direct the conduct of counsel and to require counsel's adherence to applicable disciplinary and ethical rules. *Turnbull v. Topeka State Hosp.*, 185 F.R.D. 645, 651 (D.Kan. 1999). *See also Weeks v. Independent School Dist. No. I–89*, 230 F.3d 1201, 1208, 1211 (10th Cir.2000) (the control of an attorney's conduct in litigation is within the supervisory powers of the court). In addition, this Court has broad discretion to fashion an appropriate sanction or penalty to remedy a violation of an ethical rule, including the remedy of disqualification of counsel. *Id.* at 1211.

■■■ Judge Vratil has summarized the disqualification standard as follows:

> The Court has the power to disqualify counsel at its discretion for violations of professional standards of ethics. Ethical violations do not automatically trigger disqualification. Because disqualification affects more than merely the attorney in question, the Court must satisfy itself that this blunt remedy serves the purposes behind the ethical rule in question.
>
> * * * * * *
>
> ■■■ The Court must determine a motion to disqualify counsel by measuring the facts of the particular case. The moving party must show proof that is more than mere speculation and sustains a reasonable inference of a violation. The essential issue is whether the alleged misconduct taints the lawsuit.

The Court should not disqualify unless the offending attorney's conduct threatens to taint the underlying trial with a serious ethical violation. Because the interests to be protected are critical to the judicial system, the Court should resolve doubts in favor of disqualification. The Court must balance several factors, however, including society's interest in ethical conduct, defendants' right to choose their counsel, and the hardship which disqualification would impose on the parties and the entire judicial process.

*Biocore Med. Techs., Inc. v. Khosrowshahi*, 181 F.R.D. 660, 664 (D.Kan.1998) (citations and quotations omitted).

This Court also has "both the duty and the broad authority" to exercise control over a putative class action and "to enter appropriate orders governing the conduct of counsel and parties." *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 100, 101 S.Ct. 2193, 68 L.Ed.2d 693 (1981). As noted above in Part III, *Gulf Oil* requires that the Court carefully weigh the need to limit communications between class counsel and potential class members against the potential interference with the rights of the parties and to make a specific finding of the particular abuse or threatened abuse before entering an order that limits communication between class counsel and any putative class members. *Id.*, 452 U.S. at 101, 101 S.Ct. 2193.

■■■ Finally, the Court notes that it has the authority to grant the relief sought by Defendants, including disqualification of Plaintiff's counsel, pursuant to 28 U.S.C. § 636(b)(1). That statute provides that a district judge may designate a magistrate judge to hear any pretrial matter, except for certain enumerated, dispositive motions.[5] Numerous cases have held that motions to disqualify or for other relief

5. On January 25, 2001, Judge Lungstrum re- ferred this case to the undersigned Magistrate

related to the conduct or ethical violations of counsel fall within a magistrate's authority under 28 U.S.C. § 636(b)(1). *See, e.g., Hutchinson v. Pfeil,* 105 F.3d 562, 565 (10th Cir.1997) (magistrate has authority under 28 U.S.C. § 636(b)(1) to rule on motion to disqualify counsel where counsel is alleged to have lied to the court and committed other violations of the rules of professional conduct); *Gray v. Rhode Island Dep't of Children, Youth and Families,* 937 F.Supp. 153, 154 & n. 1 (D.R.I. 1996) (magistrate has authority under 28 U.S.C. § 636(b)(1) to rule on motions to disqualify because such motions are non-dispositive of the litigation); *Wang Labs., Inc. v. CFR Assoc., Inc.,* 125 F.R.D. 10, 12 (D.Mass.1989) (magistrate has authority under 28 U.S.C. § 636(b)(1) to rule on motions to disqualify and to issue appropriate orders to prohibit or remedy abusive or unethical litigation practices).

### 3. The remedies to be imposed by this Court

#### a. *Disqualification of Plaintiff's counsel*

██ Applying all of the above-cited standards to this case, the Court holds that disqualification of Plaintiff's counsel and their firm [6] is appropriate. Although Plaintiff Marcus Hammond, Sr., has a strong interest in being represented by his present counsel, Defendants have an even stronger interest in preventing managerial employees such as Mr. Hope from divulging attorney-client privileged information to adverse counsel and in preventing adverse counsel from obtaining potentially damaging statements from such employ-

ees. While this Court will take other actions to lessen the prejudicial effect and the taint to the lawsuit that the ex parte communications have created (*see* subparts b-g below), the Court can conceive of no less onerous alternative than disqualification to fully remedy the situation.

Plaintiff's counsel improperly acquired information about matters significantly impacting this lawsuit—about the alleged shredding of documents, the document production, and the alleged discrimination of other employees. To the Court's knowledge, none of the discussions between Plaintiff's counsel and Mr. Hope was recorded in any fashion. It is thus impossible for the Court to learn of the exact details of the discussions and to ascertain the potential advantage that the ex parte communications may have provided Plaintiff, his counsel, and the potential class members.[7]

Furthermore, the Court finds that the discussions between Mr. Hope and Plaintiff's counsel have undermined the integrity of the judicial process and tainted the lawsuit, both of which weigh heavily in favor of disqualifying Plaintiff's present counsel. Mr. Hope is the Director of Human Relations for the City and manages its Human Relations Department. He is the City's "EEO Officer" and the Secretary for the Human Relations Board. He investigates claims of discrimination involving the City and makes findings as to whether discrimination has occurred and makes recommendations to the City Manager as to what actions should be taken. While acting on behalf of the City, he deals

---

Judge for all pretrial proceedings. *See* doc. 27.

**6.** To allow other members of counsel's firm to continue representation of Mr. Hammond or any other plaintiff or class member in this action would subvert the purposes behind Rule 4.2's prohibition against ex parte communications.

**7.** The Court notes, however, that it appears that Plaintiff's counsel have been forthright, candid, and honest in their pleadings and communications with the Court as to the nature of their discussions with Mr. Hope.

directly and repeatedly with equal employment opportunity and discrimination issues, which are the very same issues that lie at the heart of this lawsuit.

The Court is not persuaded by Plaintiff's argument that his counsel should not be disqualified because they relied on Mr. Hope's representation that he did not have managerial responsibilities. A mistaken or even innocent belief that Mr. Hope was not a manager or that he otherwise fell outside the scope of Rule 4.2 is immaterial. *See Faison v. Thornton,* 863 F.Supp. 1204, 1214 (D.Nev.1993) (disqualifying counsel despite the fact that they mistakenly believed their interview of managerial employee was permissible because employee represented to them that his employer had consented to the meeting). Neither negligence nor lack of intent to violate Rule 4.2 should excuse a violation. *See id* ("Negligence, ignorance, or lack of intent do not excuse a violation of [an ethical rule prohibiting communications with the managerial employee of a represented party]").

Here, Plaintiff's counsel knew from the City's interrogatory answers, which were served in January, *before* Mr. Brown's initial conversation with Mr. Hope, that Mr. Hope had assisted in the preparation of those answers and that his title, at least at the time the interrogatory answers were served, was "Acting Human Resources Director." *See* Answer to Interrogatory No. 1, attached as Ex. A to Defendants' Motion for Protective Order. That alone should have been enough to make Plaintiff's counsel wary of communicating with Mr. Hope. Plaintiff's counsel should have declined to speak with Mr. Hope based on those facts alone, unless they obtained permission from Defendants' counsel or the Court to speak with him.

Even assuming arguendo that it was appropriate for Plaintiff's counsel to conduct a limited interview of Mr. Hope to determine his managerial status, it was clearly inappropriate *to continue* communicating with Mr. Hope after learning first-hand from him that he was employed by the City as the Human Relations Director. Brown Aff., ¶ 9. Even Mr. Brown admits that he initially had "concerns" about Mr. Hope being a City employee with managerial responsibility and that he discussed those "concerns" with Mr. Hope. *Id.* In their very first conversation in late January, Mr. Hope informed Mr. Brown that he was Human Relations Director and that he reported directly to the City Manager. He also informed Mr. Brown that during his entire period of employment with the City (beginning in 1995) he served as the City's "EEO Officer" and as the Secretary for the Human Relations Board. *Id.* Furthermore, he told Mr. Brown that he was "responsible for areas such as recruitment, employee and labor relations, safety and workers compensation programs, and investigating complaints of discrimination." *Id.*

Here, Plaintiff's counsel proceeded to interview Mr. Hope despite receiving substantial, reliable information that Mr. Hope was a managerial employee. The Court recognizes that Plaintiff's counsel had a duty to act as a zealous advocate for Mr. Hammond and the putative class members and that interviewing a City employee such as Mr. Hope could have revealed information beneficial to their case. However, that duty is offset by counsel's duty to refrain from having ex parte communications prohibited under Rule 4.2. In an attempt to satisfy both of those duties, Plaintiff's counsel could have contacted Defendants' counsel, indicated their desire to speak to Mr. Hope, and inquired as to whether the City considered Mr. Hope to be a managerial employee or to otherwise fall within the scope of Rule 4.2.[8]

8. In contacting defense counsel, Plaintiff's counsel would not necessarily have had to

Plaintiff's attorneys attempt to excuse their conduct by asserting that Defendants' counsel did not immediately return Mr. Brown's call to object to Mr. Brown's communications with Mr. Hope. The Court does not find this fact material. As Defendants point out, by the time Mr. Brown placed the call to defense counsel (some time after the January 22, 2001 meeting with Mr. Hope but before February 1, 2001), the damage had already been done. Mr. Brown had already engaged in two ex parte communications with Mr. Hope by that time. In any event, Defendants raised the issue with the Court only one week after learning of the ex parte communications, and they filed their Motion for Protective Order shortly thereafter. The Court can hardly characterize Defendants' actions as dilatory or as implicitly granting Plaintiff's counsel permission to further interview Mr. Hope.

In sum, the Court finds it necessary to disqualify Plaintiff's counsel and the law firm of Anderson & Associates, LLC, from representing Plaintiff Marcus Hammond, Sr., or any other individual (including any class members) *in this case*. Plaintiff's counsel and the law firm of Anderson & Associates, LLC, shall also be prohibited from representing any class of individuals in any other action based on the class allegations asserted in this case. Plaintiff's counsel and their firm shall not, however, be restricted from representing Mr. Hope in a *separate, individual* action against the City. Mr. Hope has the right to select his own counsel and to proceed with legal action against the City represented by Glenn Brown, Denise Anderson, or any other attorneys associated with Anderson and Associates, LLC, if he so desires.

reveal that Mr. Hope had contacted Anderson & Associates, LLC for the purpose of seeking

*b. Prohibition against Plaintiff's counsel having any further contact with Mr. Hope or other managerial City employees*

In addition to seeking disqualification, Defendants request that Plaintiff's counsel cease all ex parte communications with Mr. Hope and any other managerial employees of the City. Because the Court is disqualifying Plaintiff's counsel from further participation in this case, there is no need or basis for the Court to impose this remedy. As noted above, Mr. Hope is free to retain the firm of Anderson and Associates, LLC, to represent him in any *individual* matter, including any individual action based on his claims of race discrimination. Of course, in the event that Plaintiff's counsel do represent Mr. Hope in an individual action, they must comply with Rule 4.2 and refrain from speaking with any managerial employees of the City or others who fall within the scope of the comment to Rule 4.2.

*c. Production of list of all managerial employees contacted by Plaintiff's counsel and all materials relating to the ex parte communications*

Defendants also request that Plaintiff produce to Defendants a list of all City managerial employees contacted by Plaintiff's counsel since the beginning of this lawsuit, together with a "detailed summary of the date, place and subject matter of all such communications." Defendants also request that any statements and/or affidavits obtained from any such managerial employees be produced.

*With respect to City employees other than Mr. Hope,* Mr. Brown has already stated in his affidavit that he has had no communications with any such City em-

legal representation as to his own claims of discrimination.

ployees. *See* Brown Aff., ¶ 39. Ms. Anderson, however, did not address this issue in her affidavit. Defendants are entitled to learn whether she has had any ex parte communications with any other City employees who fall within the scope of Rule 4.2. To facilitate the identification of any such employees, the Court will first order Defendants to submit to Plaintiff's counsel a list of individuals who have been employed by the City at any time during the pendency of this lawsuit who the City contends fall within the scope of Rule 4.2 (hereinafter referred to as "Rule 4.2 List"). Mr. Hope should not be included in the Rule 4.2 List. The Rule 4.2 List shall be filed and served on Plaintiff within *ten days* of the date of this Order. Within *ten days* of receiving the Rule 4.2 List, Ms. Anderson shall file and serve an affidavit indicating whether she has had any ex parte contact with any of the employees identified on the Rule 4.2 List. If she has had any such ex parte contact, her affidavit shall identify the employee(s), give the date(s) of the communication, and provide a brief explanation of the communication(s). If her affidavit indicates that she has had any such communications, the Court will determine, at a later date, whether a detailed summary of any such communications should be provided.

Also, in the event that Ms. Anderson or her firm has taken or possesses any statement or affidavit of any employee identified in the Rule 4.2 List, she shall produce to the Court for in camera inspection the originals of the affidavits/statements within *ten days* of service of the Rule 4.2 List. If no such affidavits or statements exist, Ms. Anderson's affidavit shall indicate that no such documents exist. In the event the affidavit reveals that Plaintiff's counsel has had any ex parte communications with any individual on the Rule 4.2 List, the Court will determine at a later date whether any additional relief is necessary. *See Faison v. Thornton,* 863 F.Supp. 1204, 1218 (D.Nev.1993) (ordering production of statements obtained during improper ex parte communications).

*With respect to the communications between Plaintiff's counsel and Mr. Hope,* the Court will deny Defendants' request for a "detailed summary of the date, place and subject matter" of the ex parte communications. The Court already has sufficient information about the nature of the contacts with Mr. Hope to determine that disqualification in this case is proper. To require Plaintiff's counsel to provide any further information about the substance of their communications would invade the attorney-client relationship existing between Mr. Hope and Mr. Brown and Ms. Anderson. The Court will, however, require Plaintiff and Plaintiff's counsel to produce to the Court for *in camera* inspection the originals of any statements or affidavits of Mr. Hope that Plaintiff's counsel or firm has taken or possesses. The Court will then determine whether production of such materials to Defendants will be required. *See id.* (ordering the production of statements to opposing counsel). Any such statements/affidavits shall be provided to the Court for *in camera* inspection within *ten days* of the date of this Order.

Although not specifically requested by Defendants, the Court also holds that Defendants may be entitled to obtain, to the extent they exist, any notes, recordings, memoranda, correspondence or other documents that discuss or relate to, or that were generated during, any discussions or meetings between Mr. Hope and Plaintiff's counsel. Defendants may also be entitled to obtain any documents that Mr. Hope has provided to Plaintiff's counsel. *See id.* at 1218 (ordering production of all recordings and documents generated as a result of the improper ex parte contact). Plaintiff and his counsel shall therefore produce

to the Court for *in camera inspection* the originals of any such recordings or documents within ***ten days*** of the date of this Order. The Court will then determine whether Defendants are entitled to review those items.

### d. Production of list of all managerial employees contacted by Plaintiff and all materials relating to the ex parte communications

Defendants also ask the Court to order Plaintiff to produce a list of all City managerial employees that *Plaintiff himself* has contacted and to provide the same detailed summary requested above along with any statements or affidavits that *Plaintiff himself* has obtained from such managerial employees.

Rule 4.2 generally does not prohibit a *party* from communicating directly with an opposing party. *Holdren v. General Motors Corp.*, 13 F.Supp.2d 1192, 1195–96 (D.Kan.1998). The Rule, does however, prohibit a party from communicating with the opposing party or obtaining statements or affidavits from the opposing party if the party's attorney directed or otherwise caused the party to make the contacts and/or to obtain the statements or affidavits. *See id.* (holding that plaintiff's counsel violated Rule 4.2 by advising client to obtain statements from opposing parties).

Here, there is no evidence indicating that this has taken place. Out of an abundance of caution, however, the Court will require Mr. Brown and Ms. Anderson to each file and serve an affidavit stating whether they directed or otherwise caused Plaintiff to obtain any statements or affidavits from any employees identified in the Rule 4 .2 List. If so, counsel's affidavits shall also identify the employee(s) from whom Plaintiff obtained the statement or affidavit. Counsel's affidavits shall be filed and served within ***ten days*** of the service of the Rule 4.2 List. If counsel's affidavits

indicate that they directed or otherwise caused Plaintiff to obtain any such statements or affidavits, the Court will determine at a later date what action, if any, should be taken.

### e. Exclusion of evidence

Defendants ask the Court to order that any evidence derived from Plaintiff's counsel's ex parte contacts be excluded as evidence in this case. The Court will grant this request to the extent that the improper ex parte contacts with Mr. Hope resulted in any statements, affidavits, documents, or other materials that could be introduced as evidence at trial. All such material will be excluded from the evidence in this case. The Court notes, however, that if Plaintiff or his new counsel should succeed in gathering the same type of information through a proper means, for example, through a properly noticed deposition, that information will not be excluded. *See Cagguila v. Wyeth Labs., Inc.*, 127 F.R.D. 653, 654–55 & n. 3 (E.D.Pa.1989) (holding that plaintiff was prohibited from using at trial any statement or other evidence obtained through improper ex parte contact, but noting that if the excluded evidence was later obtained through properly conducted discovery, the information could be used at trial).

### f. Sanctions

Defendants also request that they be awarded sanctions, including but not limited to, the costs associated with their filing of the instant Motion for Protective Order. The Court will grant this request, and will impose sanctions against the law firm of Anderson & Associates, LLC. Within ***ten days*** of the date of this Order, Defendants' counsel shall file and serve a detailed affidavit outlining the reasonable expenses and attorney fees Defendants have incurred in obtaining this Order, including

those attorney fees incurred in connection with preparing the Motion for Protective Order, preparing for and attending the April 3, 2001 evidentiary hearing, and preparing the Rule 4.2 List. Plaintiff, Denise M. Anderson, Glen Brown and/or Anderson & Associates, LLC, shall file and serve any briefs in opposition thereto within *ten days* after service of Defendants' affidavit.

### g. *Other relief*

Defendants also request "whatever other and further relief the Court deems appropriate." Doc. 31 at 6. The Court finds it proper to prohibit Plaintiff's present counsel from disclosing to any individual or party any of the information they gained through their ex parte contacts with Mr. Hope, except in the course of representing Mr. Hope in connection with his *individual* claims. The Court will therefore enter an order prohibiting Plaintiff's present counsel from disclosing to any individual or party, without prior consent of the Court, the following information and documents, except in the course of representing Mr. Hope in connection with his *individual* claims: (i) information regarding any discussions or meetings they had with Mr. Hope, including the contents of any such discussions or meetings and any information they learned or obtained during the course of any such discussions or meetings; and (ii) to the extent they exist, any notes, recordings, memoranda, or other documents discussing, relating to, or generated by, any such discussions or meetings. *See Faison,* 863 F.Supp. at 1218 (prohibiting counsel who violated rule against ex parte contacts and any counsel retained to replace them, and any of their experts or employees or other individuals assisting them, from disclosing this type of information to any individual, without permission from court).

Finally, pursuant to Canon 3B(3) of the Code of Conduct for United States Judges, the Court will forward a copy of this Order to the Disciplinary Administrator so that he may take whatever other action which may be appropriate.

**IT IS THEREFORE ORDERED** that Defendants' Motion for Protective Order (doc. 31) is granted in part and denied in part, as set forth herein.

**IT IS FURTHER ORDERED** that Glenn B. Brown, Denise M. Anderson, and the firm of Anderson and Associates, LLC, are hereby disqualified from representing Plaintiff Marcus Hammond, Sr., or any other individual (including any class members) *in this case.* Glenn B. Brown, Denise M. Anderson, and the law firm of Anderson & Associates, LLC, shall also be prohibited from representing any class of individuals in any other action based on the class allegations asserted in this case.

**IT IS FURTHER ORDERED** that within *ten days* of the date of this Order, Defendants shall file and serve on Plaintiff a list of individuals who have been employed by the City at any time during the pendency of this lawsuit who the City contends fall within the scope of Rule 4.2. Al Hope, Sr., shall not be included in the Rule 4.2 List.

**IT IS FURTHER ORDERED** that within *ten days* of service of the Rule 4.2 List, Denise M. Anderson shall file and serve an affidavit indicating whether she has had any ex parte contact with any of the employees identified on the Rule 4.2 List. If she has had any such ex parte contact, her affidavit shall identify the employee(s), give the date(s) of the communication, and provide a brief explanation of the communication(s).

**IT IS FURTHER ORDERED** that within *ten days* of service of the Rule 4.2 List, Denise M. Anderson shall produce to the Court for *in camera* inspection the originals of any affidavits or statements of

any employee identified in the Rule 4.2 List that she or her firm has taken or possesses. If no such affidavits or statements exist, Ms. Anderson's affidavit shall so state.

IT IS FURTHER ORDERED that within *ten days* of the date of this Order, Plaintiff and his counsel shall produce to the Court for *in camera* inspection the originals of any statements or affidavits of Al Hope, Sr., that Plaintiff's counsel or firm has taken or possesses.

IT IS FURTHER ORDERED that within *ten days* of the date of this Order, Plaintiff and his counsel shall produce to the Court for *in camera* inspection the originals of any notes, recordings, memoranda, correspondence or other documents that discuss or relate to, or that were generated during, any discussions or meetings between Al Hope, Sr., and Plaintiff's counsel, and the originals of any documents that Al Hope, Sr., has provided to Plaintiff's counsel.

IT IS FURTHER ORDERED that within *ten days* of the date of service of the Rule 4.2 List, Glenn B. Brown and Denise M. Anderson shall each file and serve an affidavit stating whether they directed or otherwise caused Plaintiff to obtain any statements or affidavits from any employees identified on the Rule 4.2 List, and shall identify each employee from whom any such statement or affidavit was obtained.

IT IS FURTHER ORDERED that the Court shall exclude from evidence in this case any statements, affidavits, recordings, documents, or other evidentiary materials that could be introduced at trial, which were generated or created as a result of Plaintiff's counsel's ex parte contacts with Al Hope, Sr.

IT IS FURTHER ORDERED that Defendants' request for sanctions is granted, and sanctions will be imposed against the law firm of Anderson & Associates, LLC.

Within *ten days* of the date of this Order, Defendants' counsel shall file and serve a detailed affidavit outlining the reasonable expenses and attorney fees incurred in obtaining this Order, including those attorney fees incurred in connection with the April 3, 2001 evidentiary hearing. Plaintiff, his present counsel, and/or Anderson & Associates, LLC, shall file and serve any briefs in opposition thereto within *ten days* after service of Defendants' affidavit.

IT IS FURTHER ORDERED that Plaintiff's present counsel are prohibited from disclosing to any individual or party, without prior consent of the Court, the following information and documents, except in the course of representing Mr. Hope in connection with his *individual* claims: (i) information regarding any discussions or meetings they had with Al Hope, Sr., including the contents of any such discussions or meetings and any information they learned or obtained during the course of any such discussions or meetings; and (ii) to the extent they exist, any notes, tape recordings, memoranda, or other documents or recordings discussing, relating to, or generated in, any such discussions or meetings.

IT IS FURTHER ORDERED that the Clerk shall mail a copy of this Order to the Kansas Disciplinary Administrator at the address listed below.

IT IS SO ORDERED.